UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL NATHAN BLATTBERG,        )<br>                                                           )<br>            Plaintiff,                              )<br>                                                           )<br>            v.                                         )<br>                                                           )<br>JULIE GALE BRESKIN,                    )<br>                                                           )<br>            Defendant.                          )<br>_____) | Case:1:26-cv-11011-DLC |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
EMERGENCY MOTION (i) TO DISMISS GIVEN THE PRIOR PENDING
ACTION AND (ii) TO SEAL DOCUMENTS AND PLEADINGS CONSISTENT
WITH THE STATE SUPERIOR COURT IMPONDMENT ORDER**

### Introduction

This case presents an unfortunate example of procedural gamesmanship at its worst following efforts to effectuate a pre-suit settlement[1] of a long-simmering family dispute involving allegations of child sexual abuse.

**Factual and Procedural Background**:

Plaintiff alleges that he was sexually assaulted and abused by his mother, the defendant, while he was a child. He contacted counsel to assist him with those claims. *See* Durso Aff. at ¶1. In accord with Plaintiff's counsel's usual practice a demand letter and draft complaint of the filing in this Court was sent to the Defendant. *See id.* at ¶1. Defendant retained counsel who contacted Plaintiff's counsel. *See id.* at ¶7. Defense

---

[1] It is, of course, the policy of the law to encourage settlement. *See, e.g., Appleton v. Nat. Union Fire Ins. Co. of Pittsburgh*, 145 F.4th 177, 184 (1st Cir. 2025); *U.S. v. Cannons Engineering Corp.*, 899 F.2d. 79, 84 (1st Cir. 1990).

1

counsel indicated he wanted an extension of the filing deadline asserted in the demand letter because he claimed to have a trial in February and would get back to Plaintiff's counsel. *See id.* at ¶8. Plaintiff's counsel, as a matter of usual and customary professional courtesy, agreed to defense counsel's request. *See id.* at ¶7.

Thereafter, without further communication with Plaintiff's counsel, Defense counsel filed a "preemptive strike" lawsuit in Superior Court against Plaintiff in an obvious attempt to assume the mantle of the injured party while depriving the "'natural plaintiff' – the one who wishes to present a grievance for resolution by a court," of his choice of forum. *See Piedmont Hawthrone Aviation, Inc. v. Tritch Environmental Health and Safety, Inc.*, 403 F. Supp. 2d 609, 616 (N.D.N.C. (2005) (responsive action filed after receipt of demand latter) (*citing Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002)); *cf. Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 431 (7th Cir. 1993). With the state court filing, defendant filed an emergency motion for impoundment of the identities of both the Plaintiff and the Defendant. Plaintiff's response was to file his case in this Court, his chosen forum, as soon as possible and to remove defendant's preemptive action to this Court.[2] *See* at ¶14.

For the reasons set forth below, the Court should deny Defendant's motion in its entirety.

## Argument

A. **This Case Should not be Dismissed Under the Prior Pending Action Doctrine Because the Defendant Improperly Tried to Supplant Plaintiff's Choice of Forum**

---

[2] Plaintiff intends to move to consolidate the removed case with this case.

2

As detailed above, the Defendant filed her state court case in response to notice of the forthcoming federal lawsuit and the opportunity to settle it without the need for litigation. *See* Durso Aff. at ¶¶ 6-11. She coupled that filing with an emergency request for impoundment that is unwarranted under the facts of this case – particularly as it relates to an alleged assailant.

Such procedural gamesmanship is not new to the Courts including this one. In *Walsh v. GAB Robins North America, Inc.*, No. 07CV12333-NG, 2009 WL 10693533 (D. Mass. Feb. 18, 2009), Judge Gertner addressed such a situation. There, in response to receiving a demand letter under c. 93A from a Massachusetts resident, the Tennessee-based corporate Defendant filed a declaratory judgment action against the injured party in the Middle District of Tennessee. *See id.* at *1-*2.

The District Court noted that:

> The First Circuit has held that although there is a "strong presumption in favor of a plaintiff's forum choice," the defendant may still overcome this presumption by proving "that the considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996). This court has also held that the following factors should be considered in determining whether the later-filed action should proceed: "(1) the relative convenience of the parties; (2) the convenience of the witnesses and location of documents; (3) any connection between the forum and the issues; (4) the law to be applied; and (5) the state or public interest at stake." *TransCanada Power Mktg., Ltd. v. The Narragansett Elec. Co.*, 402 F. Supp. 2d 343 (D. Mass. 2005)(*citing Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 16 (D. Mass. 2002)).

Here, all of the interests apply equally to both the formerly state and now, following removal, both federal cases.[3]

---

[3] In *Walsh*, Judge Gertner also addressed the fact that Rule 13 did not prevent the filing of a duplicative action and that in any event, the "first-filed rule is not an absolute bar to the later filed action." *See Walsh*, 2009 WL 10693533, at *7-*8.

3

The *Walsh* court went on to note that courts have also looked at exceptions to the first-filed rule due to equitable considerations. It stated:

> This court and others have been particularly reluctant to apply the first-filed rule where an action for declaratory judgment is filed in response to a demand letter. *See id.*; *see also Factors, Etc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978). Similarly, courts have declined to give the first-filed rule controlling weight where the earlier action was filed "in apparent anticipation of imminent judicial proceedings," *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982). That is precisely what happened in this case.

*Id.* at *9. And, it is plainly what happened in this case, with the added equitable insult that the preemptive filing was done through abuse of professional courtesy without which the civil justice system becomes unnecessarily less civil. The Court should not reward such conduct. *See id.* (noting "the profound problems that would be created for the legal system if putative tortfeasors were permitted to freely sue alleged tort victims for declaratory rulings on affirmative defenses in the court of their choice and in advance of a bodily injury suit.").

The motion to dismiss should be denied.[4]

### B.   The Court Should Deny Defendant's Motion for Impoundment

The Defendant's Emergency Motion to Impound failed, on its face, to comply with Superior Court Rule 9A(d)(1) as it relates to emergency motions. First, it was not "served on all parties forthwith upon filing[.]" *See* Durso Aff. at ¶12. Second, it was not accompanied by a certification that the filing party has made a good faith effort to contact and confer with all parties regarding the subject of the motion, and whether any of those

---

[4] As a practical matter, given the removal of the state court action, the litigation between these parties is going to happen in Federal Court in any event. This case be easily achieved by the denial of the motion to dismiss, and the consolidation of the removed action with this case.

4

parties assents to or opposes the emergency motion. *See id.* at ¶12. This is hardly surprising given the pre-emptive gamesmanship of the state court filing.

In addition to the troubling procedural irregularities of the state court filing, this is not a case that warrants any consideration of impoundment. Such motions are customarily brought by and allowed for sexual assault victims. *See id.* at ¶4. Here, it is the alleged assailant that is seeking impoundment – not the sexual assault victim. *See id.* at ¶5.

Indeed, a case cited - in a misleadingly limited way -- by Defendant in the Superior Court (but not cited by Defendant here) makes the inappropriateness of impoundment in favor of Defendant here apparent. There, when considering the *Boston Globe's* effort to obtain impounded information, the late SJC Chief Justice Gants, then sitting on the Superior Court bench, addressed impoundment of identifying information related to child sexual abuse victims in the context of the church sexual abuse scandal. *See Globe Newspaper Company, Inc. v. Clerk of Suffolk Superior Court*, 14 Mass. L. Rep. 315, 2002 WL 202464 (Memorandum and Order on Plaintiff Globe Newspaper Company, Inc.'s Motion to Terminate Impoundment Orders, Feb. 4, 2002). [Attached hereto as Ex. A. After addressing the various factors that warranted the impoundment of identifying information about the child victims, *see id.* at *2-*7, the Court turned its attention to whether there was good cause to impound identifying information about the religious institutions or senior clergy who were sued under theories of vicarious liability or negligent supervision and the individual alleged abusers. *Id.* at *7-*9.

The Court concluded that in contrast to the sexual abuse victims, the alleged perpetrators were not entitled to impoundment. The Court started its analysis of whether

"good cause" existed to impound identifying information about the assailants by accepting three propositions as true.

First, the Court noted that in all five impounded cases at issue, neither a judge nor jury had made a finding that the defendant clergymen did or did not in fact sexually abuse the plaintiff children, nor did the clergymen admit such conduct. *See id.* at *8. Four cases were resolved by stipulation of dismissal "apparently following settlement" and the 5th was filed simply to obtain Court approval of the settlement of a minor. *See id.* "Therefore, in all five of these cases there are allegations of sexual abuse in the plaintiffs' complaints but nothing that allows any impartial observer to determine the merits of those allegations." *Id.*

Second, the Court noted that "regardless of the actual merits of these allegations, the disclosure of the names of these defendants will have a devastating impact on their reputations and their lives." *Id.*

Third, the Court noted that most of the 5 impounded cases resolved 5 years ago, without a trial. *Id.*

Nonetheless, the "Court does not find that their interest in remaining anonymous is so compelling as to override the presumption of public access to these court records." *See id.*

After noting that sexual abuse by clergy "is, quite properly a matter of immense public concern and enormous community interest" the Court went on to reason that:

> Focusing on the privacy interests alleged, this Court recognizes that, while courts sometimes protect the privacy rights of victims and allow them to use a pseudonym, courts almost never find privacy rights in the alleged victimizers and allow them to proceed with a pseudonym. *See Doe v. Diocese Corporation*, 43 Conn. Super. 152, 647 A.2d 1067 (Superior Ct. Conn.1994) (forbidding the use of a pseudonym by a clergy defendant accused in a civil action of child sexual

6

> abuse). Certainly, defendants in criminal cases are virtually never permitted to proceed with a pseudonym, even though their reputations, too, may be devastated by the indictment regardless of the verdict. *See U.S. v. Maling*, 737 F. Supp. 684, 705-706 (D.Mass.1990) (denying defendant's request to substitute a name other than his own and declaring, "The defendant must live with his name and its attendant reputation"). *But see United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir.1981) (permitting defendant to use pseudonym when he faces a risk of serious bodily harm if his cooperation with the government were to become known). The primary difference between the privacy interests of plaintiffs and defendants in cases alleging sexual abuse is that, for a plaintiff, the stigma and other problems that arise from revelation of his identity remain even after he prevails at trial. For a defendant, vindication at trial may not entirely obliterate the memory of the stigma, but it will certainly diminish its force.

*Id.* at *9. *See also Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, *67-*69 (2024) (discussing the sources of the strong presumption against the use of synonyms in civil litigation); *Doe v. City of Springfield*, 2025 WL 1424333, *1-*2 (D. Mass., May 16, 2025) (discussing strong presumption against anonymity); *Doe v. Hefner*, 35 Mass. L. Rptr. 186, 2018WL4701360 (Mass. Super., Aug. 15, 2018) (discussing *Globe Newspaper Co.*). Not surprisingly, Defendants were not allowed to proceed under pseudonyms.

"Litigation by pseudonym should only occur in "exceptional cases." *Doe v. Mass. Inst. of Tech.*, 46 F.4th at 70 (*citing Doe v. Megless*, 654 F.3d 404, 408 (3rd Cir. 2011)); *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (per curiam) ("Lawsuits are public events."); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981))). In *Doe v. Mass. Inst. of Tech.*, the First Circuit sketched out four general categories of exceptional cases in which party anonymity ordinarily will be warranted. *See Doe*, 46 F.4th at 71-72. In setting forth these "sketches[,]" the First Circuit the Court cites 13 cases. *See id.* at 70-71. In all but perhaps one of them, the party seeking anonymity was the Plaintiff. *See id.* This no doubt explains the procedural gamesmanship engaged in by the Defendant in filing her now

7

removed, preemptive, Superior Court case by which she attempts to cloak herself in the guise of the victim entitled to anonymity.

Plaintiff has alleged that Defendant was the assailant in a case involving childhood sexual abuse. Through this lens, her efforts to satisfy the *Doe* categories lacks the necessary heft to warrant impoundment.

Defendant argues under the first *Doe* category that she faces "a credible threat of unfair severe psychological harm[]" and emotional distress. This assertion is based on the premise that Plaintiff's allegations are false. As in *Globe Newspaper*, no such determination has been made and nothing in this case warrants the Court making such an implicit factual determination here. Defendant is in the same position as any other Defendant accused of childhood sexual abuse and, as such, is not entitled to anonymity. *See Globe Newspaper Co.*, 14 Mass. L. Rep. 315, 2002 WL 202464, *9 (Feb. 4. 2002).

Under the second *Doe* category, Defendant argues that identifying her would harm innocent "non-parties" – citing former patients and bereavement group members. The case cited by Defendant in this regard is *Doe v. Trs. of Dartmouth Coll.*, No. 18-CV-040-LM, 2018 WL 2048385, at *6 (D.N.H. May 2, 2028). There, where Plaintiff brought claims arising out of a sexual encounter with "Sally Smith" and a Title 9 proceeding at Dartmouth, the Court considered the interests of both the Plaintiff and "Sally Smith" in anonymity. In contrast to the instant case, *Sally Smith*[5] – the third party – had – through Dartmouth – submitted a declaration of Smith supportive of a finding of potential harm. *Id.* at *6. There is no such thing before the Court here in relation to former patients and bereavement group members. And, indeed, an argument can certainly be made that there

---

[5] A pseudonym.

8

is a public interest in the public airing of claims of childhood sexual abuse where a Defendant has the right to defend against such allegations. *See Globe Newspaper Company, Inc.*, 14 Mass. L. Rep. 315, 2002 WL 202464 at *2 (discussing public's interest in such filings).

Plaintiff has asserted claims of childhood sexual assault. The Defendant is in the same position as individual Defendants in *Globe Newspaper*. As the Court noted there, "[t]he public's interest in access to information and the beneficial effects of publicity may be as strong or stronger in some civil cases than in many criminal cases." *See Globe Newspaper Co., Inc.*, 2002 WL 202464, at *2 (*citing Gannett Co. v. DePasquale*, 443 U.S. 368, 386-87 n. 15 (1979)). The speculative arguments about impact on "non-parties" do not warrant anonymity for the Defendant.

Defendant's arguments under the third *Doe* category are also flawed. They rely on Defendant's claim of "extortionate threats", again asking this Court to implicitly make such a factual determination. Moreover, the third *Doe* category speaks in Plaintiff-focused terms and concerns about chilling Plaintiffs' peaceful redress in cases involving "intimate issues such as sexual activities [. . .] bodily autonomy, [. . .] or the identity of abused minors[]" . . . and cases where pursuing a claim might implicate a party in criminal activity. *See Doe*, 46 F.4th at 71 (citing *Stegall*, 653 F.2d at 185 ("plaintiffs were compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution").

Defendant's argument, and tactics, try to turn this category in its head.

The same is true in connection with Defendant's effort to take refuge in *Doe's* fourth paradigm. To the extent that there was a prior state Court proceeding and an

9

impoundment order,[6] that case only arose because Defendant improperly sought to preempt Plaintiff's choice of forum which wrongfully assuming the position of "natural Plaintiff" as set forth *supra*. at 2. The Court should not countenance such gamesmanship.

It should be noted that defendant in her Affidavit makes reference to her right of privacy. Breskin Aff. at ¶9. Nonetheless the Defendant has filed a claim in the Massachusetts Probate and Family Court, seeking to deny the Plaintiff his rights under an Irrevocable Trust. In those documents, defendant used both her name and the plaintiff's name, and Plaintiff's private information and medical information are extensively discussed. *See* Durso Aff. at ¶¶3, 5; Blattberg Aff. ¶18-22. Defendant is also presently named in an Arizona court case as a person alleged to be engaged in a conspiracy to deny Plaintiff his rights under that Trust. Blattberg Aff. ¶26, Ex. C.

### Conclusion

Accordingly, the Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

Respectfully submitted,
The Plaintiff,
By his attorney,

_____
Carmen L. Durso, Esq.
BBO # 139340
Law Office of Carmen L. Durso
276 Union Ave.
Framingham, MA 01702
(617) 728-9123
Carmen@dursolaw.com

---

[6] As indicated in the Affidavit of Carmen Durso, Esq., at ¶16, Plaintiff's counsel had no knowledge of the issuance of the state court impoundment order prior to the commencement of this case.

## Certificate of Service

In accordance with Federal Rule of Civil Procedure 5 and Local Rule 7.1(c), I hereby certify that on March 11, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECH system, which will send notice of electronic filing to all counsel registered with the Court's CM/ECF system.

Howard M. Cooper
Hcooper@toddweld.com
Sandy N. Eid
seid@toddweld.com
Todd & Weld, LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
Fax: (617) 227-5777

_____
Carmen L. Durso

Ex. A

14 Mass.L.Rptr. 315
Superior Court of Massachusetts.

GLOBE NEWSPAPER
COMPANY, INC., Plaintiff,
v.
CLERK OF SUFFOLK COUNTY
SUPERIOR COURT, Defendant.

No. 01-5588*F.
|
Feb. 4, 2002.

*MEMORANDUM AND ORDER ON PLAINTIFF GLOBE NEWSPAPER COMPANY, INC.'S MOTION TO TERMINATE IMPOUNDMENT ORDERS*

RALPH D. GANTS, Justice.

**\*1** The plaintiff, Globe Newspaper Company, Inc. ("Globe") has filed a complaint asking for the termination of the impoundment orders and the allowance of public inspection of the following five Suffolk County civil cases: 91-7517, 93-869, 94-4457, 94-2787, and 95-2096 ("the impounded cases").[1] By Order of this Court dated December 6, 2001, all attorneys of record in the impounded cases were provided by the Suffolk County Superior Court Clerk's Office with the Complaint, the Globe's Motion to Terminate Impoundment Orders, the Globe's Memorandum in Support of Motion to Terminate Impoundment Orders, as well as the Court's Order itself, and invited to a hearing on December 14, 2001. Counsel for the plaintiffs and for most defendants in the impounded cases appeared at that hearing, but asked for additional time to respond to the Globe's motion so that they could review the impounded court file, confer with (and in some cases locate) their clients, and submit legal memoranda. This Court agreed to their request, and held a further hearing on the Globe's motion to terminate the impoundment orders on January 24, 2002. Having heard from all parties and examined the applicable law, this Court allows the Globe's motion to the extent that the impoundment order as to Civ. No. 93-869 is vacated, and the impoundment orders as to Civ. Nos. 91-7517, 94-4457, 94-2787, and 95-2096-are modified to permit impoundment only of those portions of court records that either identify the plaintiffs by name or address, or that provide information that reasonably would permit them to be identified by someone who knows them or by someone willing to engage in investigation to determine their identity.

*DISCUSSION*

*Background*

Each of the five impounded cases concern allegations that members of the clergy sexually abused children.[2] None of the five cases were resolved through a trial; all appear to have been resolved through settlement. Nor, in any of the five cases, were any legal findings made as to the merits of the allegations. None of the five files contain any civil discovery.

In each of the five cases, there is a court order signed by a Superior Court judge directing the permanent impoundment of the entire file, issued upon the joint motion of all parties. Each court order makes rather generic findings in support of impoundment, which appear to have been proposed by the defendants and adopted by the Court.[3] Until now, none of the impoundment orders in any of these five cases had been challenged by any third party.

Under Rule 10 of the Uniform Rules on Impoundment Procedure ("the Uniform Rules"), "any interested third person" may move to modify or terminate an order of impoundment. There can be no doubt that the Globe, as the owner of The Boston Globe newspaper, is an "interested third person" with standing to bring this motion.

The Globe, although formally moving to terminate these impoundment orders, has essentially moved simply to modify them, since it has informed the Court that it "does not seek the identities of the plaintiffs who were the victims of the alleged sexual abuse." Reply Memorandum of Globe at 4. None of the plaintiffs in the five impounded cases wish to make public their allegations of childhood sexual abuse. As a result, their attorneys unanimously oppose any modification of the impoundment order if it were to reveal the identity of their clients, or reveal enough information to permit either informed or inquisitive persons to determine the identity of their clients. If their clients' identities remain concealed, the attorneys for the plaintiffs in two of the impounded cases do not oppose modification of the impoundment order. However, the attorney for the plaintiffs in three of the cases opposes any modification whatsoever. The individual defendants oppose any amount of modification to these impoundment orders. The attorney for the religious institution initially opposed any modification but, on January 31, 2002, informed the Court in

writing that it was withdrawing its formal opposition to the Globe's motion.

*The Law Governing Impoundment of Court Papers*

**\*2** When a document in a court case is filed with the court, that document is presumptively available to the general public and the press as part of the general principle that judicial proceedings, both criminal and civil, are open to all. See generally *Ottaway Newspapers, Inc. v. Appeals Court*, 372 Mass. 539, 546 (1977); *The Boston Herald, Inc. v. Sharpe*, 432 Mass. 593, 603-611 (2000). Despite the "rigorous presumption of openness," not every document filed in court need be made publicly available. *The Boston Herald, Inc.* at 608. As set forth in the Supreme Judicial Court's Uniform Rules, "[a]n order of impoundment may be entered by the court, after hearing, for good cause shown and in accordance with applicable law." Uniform Rules, Rule 7. The Uniform Rules do not define "good cause," but they do identify certain "relevant factors"-"the nature of the parties and the controversy, the type of information and the privacy interests, the extent of community interest, and the reason(s) for the request." *Id.* The agreement of the parties is not sufficient, by itself, to constitute good cause for impoundment. *Id.*

For all practical purposes, the issues before this Court are essentially threefold:

1. Is there "good cause" to impound information in court documents that would reveal the identity of a plaintiff who has alleged in a civil action that he was sexually abused as a child by a member of the clergy but who dearly wishes to keep his victimization private?

2. Is there "good cause" to impound information in court documents that would reveal the identity of a religious institution or senior clergy in that institution who are not alleged to have committed sexual abuse themselves but are named as defendants either on a claim of vicarious liability or negligent supervision?

3. Is there "good cause" to impound information in court documents that would reveal the identity of a person who is alleged, when he was a clergyman, to have sexually abused a child?

Before attempting to answer any of these questions, it is important first to attempt to give greater definition to the term "good cause."

*Good Cause*

The presumption that court records in civil proceedings are available to the general public and the press is rooted in the common law. See *The Boston Herald, Inc. v. Sharpe*, 432 Mass. at 605-606. Under the common law, "the presumption of access" permits the press and the general public to obtain a full understanding of the civil proceeding and therefore allows them to serve as an effective check on the fairness of the judicial system. *The Boston Herald, Inc.* at 606; *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-598 (1978). The public's interest in access to information and the beneficial effects of publicity may be as strong or stronger in some civil cases than in many criminal cases. *Gannett Co. v. DePasquale*, 443 U.S. 368, 386-87 n. 15 (1979). In other words, the law gives the public a presumptive right of access to all documents filed with the court because the right to a *public* trial is one of the means devised to ensure the right to a *fair* trial, and the public often needs access to the court papers to determine whether a trial has been conducted fairly.

**\*3** There is also a presumption of public access to court records in criminal cases under the First Amendment to the United States Constitution when the criminal proceedings have "an historic tradition of openness" and the public's access will play "a significant positive role in the functioning of the particular process in question." *The Boston Herald, Inc. v. Sharpe*, 432 Mass. at 606, quoting *Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't*, 403 Mass. 628, 635 (1988), which quotes *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986). The rationale for a right of access under the First Amendment is similar to the rationale for the right of access under the common law-"a major purpose of that Amendment was to protect the free discussion of governmental affairs" and a right of access ensures "that this constitutionally protected 'discussion of government affairs' is an informed one." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604-605 (1982), quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966).

In *Sharpe*, the Supreme Judicial Court extended the constitutional right of access to court records in criminal cases to civil cases under G.L. c. 209A involving domestic violence. *Id.* at 606-607. Applying its two-part test, the Supreme Judicial Court found that G.L. c. 209A proceedings met the first test-that they had "an historic tradition of openness"-as well as the second test-that public access will play "a significant positive role in the functioning of the particular process in question." *Id.* The argument in favor of a constitutional right of public access is equally compelling in civil cases, like those here, involving the alleged sexual

abuse of children. Tort actions in Superior Court involving such allegations, like G.L. c. 209A hearings, have historically been open to the public and public access to these tort actions, especially when they involve allegations of sexual abuse by members of the clergy, will play as significant a positive role in the functioning of our courts as in cases alleging domestic abuse. Therefore, this Court finds that the presumption of public access to court records in these civil actions alleging sexual abuse of children by members of the clergy is based not only on the common law but also on the First Amendment.

The presumption of openness, whether founded on the common law or the First Amendment, is not absolute. *The Boston Herald, Inc. v. Sharpe*, 432 Mass. at 604. "[A] court possesses 'inherent equitable power to impound its files in a case and to deny public inspection of them ... when justice so requires.' " *Id.*, quoting *George W. Prescott Publ. Co. v. Register of Probate for Norfolk County*, 395 Mass. 274, 277 (1985), which quotes *Sanford v. Boston Herald Traveler Corp.*, 318 Mass. 156, 158 (1945). In drafting the Uniform Rules, the Supreme Judicial Court has essentially determined that "justice so requires" when there is a finding of "good cause." Uniform Rules, Rule 7.

**\*4** Closing a court record is analogous to closing a courtroom during a trial-both deny the public a right of access to see what is happening in a judicial case and both restrictions are of constitutional dimension. The United States Supreme Court has declared that denial of the right of access to a courtroom to protect the disclosure of sensitive information requires a showing of "overriding interest based on findings that closure is essential to preserve higher values, and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 509 (1984). See also *Globe Newspaper Co. v. Superior Court*, 457 U.S. at 607 (in criminal case, to justify closure of a courtroom, the government must show that "denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve the interest"). While the "interest" warranting closure may need to be greater in closing a courtroom than in closing a court record, the analytical standard for balancing such an "interest" against the presumption of public access need not be (and should not be) any different-the "interest" must be compelling and the remedy narrowly tailored to serve that interest. The Supreme Judicial Court has recognized that this standard is equally appropriate in evaluating a claim of closure of court records, as it is a claim of closure of a courtroom. In *George W. Prescott Publ. Co. v. Register of Probate for Norfolk County*, in considering whether public records in a divorce case should be impounded under the "good cause" requirement of the Massachusetts Rules of Domestic Relations Procedure, the Court concluded "that the documents at issue here may only be impounded on a showing of overriding necessity, which is based on specific findings," citing *Press Enterprise Co. v. Superior Court of California*. 395 Mass. at 279.[4] See also *Globe Newspaper Co. v. Pokaski*, 868 F.2d. 497, 505 (1989) (adopting "as the appropriate standard the traditional compelling interest/least restrictive means test" to its analysis as to whether to close criminal court records).

The Supreme Judicial Court has also required that any order of impoundment be narrowly tailored to meet the overriding interests that justified impoundment. "If there is good cause to impound documents, a judge is required to tailor the scope of the impoundment order so that it does not exceed the need for impoundment." *The Boston Herald, Inc. v. Sharpe*, 432 Mass. at 605.

The meaning of "good cause" to impound must be understood in light of this compelling interest/narrowly tailored standard. Indeed, it is important to remember that Rule 7 of the Uniform Rules permits an order of impoundment "for good cause shown *and in accordance with applicable law.*" Uniform Rules, Rule 7 (emphasis added). In adding this second clause, the Supreme Judicial Court acknowledged that the meaning of "good cause" must be consistent with the common law and constitutional presumption of openness in judicial proceedings. Consequently, the meaning of "good cause" must reflect the constitutional rights at stake in closing court records to the public, and the strict standard that must be met to override those constitutional rights.

**\*5** The mere potential for "embarrassment" or the fear of "unjustified adverse publicity" is not sufficient to show good cause. *George W. Prescott Publ. Co. v. Register of Probate for Norfolk County*, 395 Mass. at 279. Rather, the Supreme Judicial Court has generally focused on the degree to which the information sought to be impounded, if revealed in public court records, would invade the legitimate expectation of privacy that litigants or other persons have in matters that are intensely personal and private. See *The Boston Herald, Inc. v. Sharpe*, 432 Mass. at 612 (finding no "invasion of privacy" in the release of the information in court records); *H.S. Gere & Sons, Inc. v. Frey*, 400 Mass. at 330 (affirming impoundment when the nature of the information was intensely personal and within a legitimate expectation of privacy); *George W. Prescott Publ. Co. v. Register of Probate for Norfolk County*,

395 Mass. at 278-279 (distinguishing between the legitimate expectation of privacy of a private person and a public official).

When one looks closer at the Supreme Judicial Court's analysis, it emerges that the Court has understood the otherwise circular concept of legitimate expectation of privacy to refer to private information that, if revealed publicly, would properly constitute a violation of the common law tort of invasion of privacy or statutory entitlements to privacy. That is why the Supreme Judicial Court in *Sharpe* focused on its finding that revelation of the information at issue in that case would not constitute an "invasion of privacy," and cited Section 652D of the Restatement (Second) of Torts, which defines the tort of "publicity given to private life" as follows:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

Restatement (Second) of Torts, § 652D. See also *George W. Prescott Publ. Co. v. Register of Probate for Norfolk County*, 395 Mass. at 278 (quoting comment d from Restatement (Second) of Torts, § 652D). That is also why the Supreme Judicial Court in *George W. Prescott Publ. Co.* refused to impound private information in a divorce case in which the husband at the time held two public positions-Treasurer of Norfolk County and Chairman of the Norfolk County Retirement Board. The Court concluded that the information was indeed so sensitive that it would likely be impounded if only private citizens were involved, but refused to impound it because the public position of the husband made information regarding his personal finances of legitimate concern to the public. 395 Mass. at 278-279. Indeed, the Court concluded that "the public has a vital interest in full disclosure of all information which is relevant to his alleged misuse of authority." 395 Mass. at 279.

*6 Viewing "good cause" through this prism clarifies why the Supreme Judicial Court in the Uniform Rules identified certain factors as being relevant to the determination of "good cause." The factor-"nature of the parties and the controversy"-focuses on whether the information is of legitimate concern to the public, either because a party is a public official, as in *George W. Prescott Publ. Co.*, or the controversy involves matters of legitimate public concern, such as spousal abuse, as the Court found in *Sharpe*. The factor-"the type of information and the privacy interests involved"-focuses on the extent to which the information is intensely personal and, if revealed, likely to cause emotional or psychological distress or harm. The factor-"the extent of community interest"-focuses not only on whether the matter is of legitimate concern to the public but also on whether the information (or comparable information) has already been publicly revealed in some fashion. See *Sharpe* at 612 (focusing on the already extensive media coverage of the case).

1. *Is there "good cause" to impound information in court documents that would reveal the identity of a plaintiff who has alleged in a civil action that he was sexually abused as a child by a member of the clergy but who dearly wishes to keep his victimization private?*

There can be little doubt that, if a person were publicly to reveal that a particular child had been sexually abused, that child (through his parents or legal guardian) may have a cause of action against that person under G.L. c. 214, § 1B for an "unreasonable, substantial or serious interference with his privacy." Cf. *Doe v. Town of Plymouth*, 825 F.Supp. 1102 (D.Mass.1993) (disclosure of HIV status may give rise to civil cause of action). Various statutes protect the privacy of a child from public revelation of his sexual abuse. Reports to the Department of Social Services of child sexual abuse required to be made under G.L. c. 119, § 51A, by professional persons in designated professions are kept confidential and may be made available only with the approval of the Commissioner of the Department or upon court order. G.L. c. 119, § 51D. Where a minor has gone to court to obtain a court order under G.L. c. 209A to restrain another person from continuing to sexually abuse him, the minor plaintiff's name and address and the case record are impounded unless a court orders otherwise. G.L. c. 209A, § 8. Police records regarding alleged sexual assaults, whether against a minor or an adult, are not public records. G.L. c. 41, § 97D.

The legislative purpose is manifest-for many victims of sexual abuse, especially child sexual abuse, public revelation of the abuse, if not sought by them, victimizes them yet again. It stigmatizes them as victims of such abuse, generates conversations that may re-open emotional wounds that had only begun to heal, and causes others, even those who mean well, to treat them differently. If the identity of these victims are not protected by the courts, then their access to the courts will be severely diminished, because they will not be able to turn to the courts for relief from or compensation of their emotional injuries without aggravating those same injuries. See *Doe v. Bell Atlantic Systems Services, Inc.*, 162 F.R.D. 418, 420 (D.Mass.1995) (observing how, in some

cases, "the injury litigated against would occur as a result of the disclosure of plaintiff's identity"). Therefore, this Court finds that the plaintiffs in the impounded cases, as the alleged victims of sexual abuse when they were children, have a compelling interest in preventing public disclosure of their identities.

***7** Protecting these alleged victims' compelling interest in privacy, however, does not require impoundment of the entire court file; it simply requires impoundment of their names and of any information that may reasonably be used to identify them. The use of a pseudonym has been permitted in cases when, because of the risk of social stigmatization, the danger of physical harm, or the potential for psychological injury, the plaintiff wishes to avoid revealing his or her identity in public court records. See generally *id.* Indeed, in one of the most famous cases of the last fifty years-*Roe v. Wade*, 410 U.S. 113 (1973)-the Supreme Court allowed the plaintiff to use a pseudonym so that she was not identified as having sought an abortion.

Where the plaintiff moves at the commencement of the action to use a pseudonym, the logistics of accommodating this request are relatively simple. Since a request to use a pseudonym is essentially a request for prospective impoundment, the case file remains public except for the affidavit in support of the motion to use a pseudonym that identifies the plaintiff by name. Once the motion is granted, all parties know to take pains to avoid, when they can, identifying the plaintiff by name in court papers or including information that may identify the plaintiff. When they cannot, they know to request impoundment of the particular court document and, perhaps, to include in the public file a redacted version. When, as in three of the impounded cases, no motion was made to use a pseudonym, the logistics become more difficult, since the court must redact every document in the case file to eliminate identifying information, impound the unredacted documents as part of the original case file, and create a separate redacted case file that can be made available to the public.

2. *Is there "good cause" to impound information in court documents that would reveal the identity of a religious institution or senior clergy in that institution who are not alleged to have committed sexual abuse themselves but are named as defendants either on a claim of vicarious liability or negligent supervision?*

While the defendant religious institutions and senior clergy successfully obtained orders of impoundment in each of the five impounded cases, they have provided this Court with no justification as why they are entitled to such an impoundment apart from the fact that they are the beneficiaries of the earlier orders. As then-Superior Court Justice James McHugh wrote in denying a motion brought by the Catholic Archdiocese of Boston and His Eminence Bernard Cardinal Law to impound the pleadings revealing Cardinal Law's status as a defendant in the many cases alleging sexual abuse by Father John Geoghan,:

> The allegations with respect to Cardinal Law involved alleged deficiencies in executing alleged supervisory responsibilities. There is not even the remotest suggestion of anything else. Failure to execute administrative responsibilities properly is not the kind of allegation that typically warrants impoundment and defendants have suggested no persuasive reason why the typical approach should be altered here.

***8** Memorandum and Order on Defendant's Motion to Impound, *Demeo v. Fr. John G. Geoghan et al.*, Suffolk Civ. No. 99-3170 (January 5, 2001) at 4. Impoundment as to these defendants can be justified only by the risk of embarrassment and adverse publicity, and such concerns, by themselves, never demonstrate "good cause." *George W. Prescott Publ. Co. v. Register of Probate for Norfolk County,* 395 Mass. at 279. Therefore, it is not surprising that, one week after the second hearing, the attorney for the religious institution withdrew his opposition to the Globe's motion.

3. *Is there "good cause" to impound information in court documents that would reveal the identity of a person who is alleged, when he was a clergyman, to have sexually abused a child?*

In considering whether there is "good cause" to continue to protect from public disclosure the identity of the clergymen alleged in these five impounded cases to have sexually abused children, I accept three propositions as true. First, in all five of the impounded cases, neither a judge nor a jury made any findings as to whether any of the defendant clergyman in fact did or did not sexually abuse the plaintiff children as alleged. Nor did any of the clergymen make any admission of responsibility in any court record in these cases. Four of the five cases were resolved through a stipulation of dismissal, apparently following a settlement; the fifth was filed simply for the purpose of obtaining judicial approval of a settlement involving a minor that had been reached before the complaint was filed. Therefore, in all five of these cases there are allegations of sexual abuse in the plaintiffs' complaints but nothing that allows any impartial observer to determine the merits of those allegations.

Second, regardless of the actual merits of these allegations, the disclosure of the names of these defendants will have a devastating impact on their reputations and their lives. The Boston Globe and Boston Herald have published many articles recently examining allegations and, at times, admissions of child sexual abuse by members of the Catholic clergy in this Commonwealth. This Court has no doubt that, if this Court were to vacate or modify the orders of impoundment so as to reveal the identities of these clergy defendants, their names and the allegations against them in the complaints will be in both the Globe and the Herald within 48 hours. This Court acknowledges that the lives of these defendants will likely never be the same. The stigma of being accused of child sexual molestation, especially as a clergyman, will live with these men and haunt them until the day they die.

Third, the most recent of the five impounded cases was resolved five years ago, without a trial.

In view of these three truths, this Court recognizes that these clergy defendants justly can claim that they have a strong interest in continuing to impound their case files, at least to the extent of permitting them to use a pseudonym. Yet, this Court does not find that their interest in remaining anonymous is so compelling as to override the presumption of public access to these court records. Looking at the relevant factors suggested by the Supreme Judicial Court, this Court finds that the sexual abuse of children by members of the clergy is, quite properly, a matter of immense public concern and of enormous community interest. The public, especially those who belong to the same religious institution as the defendants, have a valid interest in knowing which members of their clergy have been accused of sexual abuse in a civil action in Massachusetts, and what steps, if any, have been taken by that religious institution in the face of these allegations. Protecting the identity of these defendant clergymen would effectively bar the public and their former congregants from knowing who these clergymen are and what has happened to them.[5] It would also make it far more difficult for members of the public to evaluate whether their religious institution and its leadership have acted responsibly in responding to these allegations.

*9 Focusing on the privacy interests alleged, this Court recognizes that, while courts sometimes protect the privacy rights of victims and allow them to use a pseudonym, courts almost never find privacy rights in the alleged victimizers and allow them to proceed with a pseudonym. See *Doe v. Diocese Corporation,* 43 Conn.Super. 152, 647 A.2d 1067 (Superior Ct. Conn.1994) (forbidding the use of a pseudonym by a clergy defendant accused in a civil action of child sexual abuse). Certainly, defendants in criminal cases are virtually never permitted to proceed with a pseudonym, even though their reputations, too, may be devastated by the indictment regardless of the verdict. See *U.S. v. Maling,* 737 F.Supp. 684, 705-706 (D.Mass.1990) (denying defendant's request to substitute a name other than his own and declaring, "The defendant must live with his name and its attendant reputation"). But see *United States v. Doe,* 655 F.2d 920, 922 n. 1 (9th Cir.1981) (permitting defendant to use pseudonym when he faces a risk of serious bodily harm if his cooperation with the government were to become known). The primary difference between the privacy interests of plaintiffs and defendants in cases alleging sexual abuse is that, for a plaintiff, the stigma and other problems that arise from revelation of his identity remain even after he prevails at trial. For a defendant, vindication at trial may not entirely obliterate the memory of the stigma, but it will certainly diminish its force.

*Conclusion*
This Court finds that, apart from the interests of the plaintiffs in protecting disclosure of their identities, there is no interest so compelling as to override the common law and constitutional presumption of public access to court records. Therefore, the orders of impoundment in four of the impounded cases-Suffolk Civ. Nos. 91-7517, 94-4457, 94-2787, and 95-2096-are hereby modified to permit impoundment only of those portions of court records that either identify the plaintiffs by name or address, or that provide information that reasonably would permit them to be identified by someone who knows them or by someone willing to engage in investigation to determine their identity. The order of impoundment in the fifth impounded case-Suffolk Civ. No. 93-869-is hereby vacated, because it was filed with the plaintiff using a pseudonym and there is nothing in the file that would identify the plaintiff, so no redaction is necessary.

To accomplish this result, this Court has caused the impounded files to be copied, except for Suffolk Civ. No. 93-869, and has caused the tape recordings of hearings in Civ. Nos. 91-7517 and 94-4457 to be transcribed. The Court has personally redacted with a black magic marker those portions of the court documents and the transcripts that would reveal the plaintiffs' identity ("the original redactions"), and

has made a copy of these redacted files ("the redacted copy"). The original redactions shall be placed in the original files in these four cases (since one might still be able to see the names through the magic marker), and the original files shall remain impounded. The redacted copies shall be placed in new redacted files, marked by the appropriate civil number and the word "REDACTED" (for instance, No. 91-7517-REDACTED). Only the redacted files shall be made available to the public.[6] For each of the cases that were filed with the plaintiff using his true name-Suffolk Civ. Nos. 91-7517, 94-4457, and 94-2787-a new docket shall be prepared by the Clerk of Court replacing the name of the plaintiffs in all instances with a pseudonym, e.g. John Doe.

*10 To ensure that the redactions adequately protect the identity of the plaintiffs, this Court will stay this Order until February 15, 2002. Counsel for each plaintiff in the impounded cases, through arrangement with the Assistant Clerk, may review the redacted file in his case to see the proposed redactions and, no later than February 12, 2002, may file written objections to the manner in which the redactions have been made, with specific requests for additional redactions.

*ORDER*

After hearing, for the reasons detailed above, this Court hereby *ORDERS* that the Globe's motion is *ALLOWED* to the extent that:

1. The orders of impoundment in four of the impounded cases-Suffolk Civ. Nos. 91-7517, 94-4457, 94-2787, and 95-2096-are hereby modified to permit impoundment only of those portions of court records that either identify the plaintiffs by name or address, or that provide information that reasonably would permit them to be identified by someone who knows them or by someone willing to engage in investigation to determine their identity. The order of impoundment in the fifth impounded case-Suffolk Civ. No. 93-869-is hereby vacated, because it was filed with the plaintiff using a pseudonym and there is nothing in the file that would identify the plaintiff, so no redaction is necessary.

2. To accomplish this result, this Court has caused the four original files in Suffolk Civ. Nos. 91-7517, 94-4457, 94-2787, and 95-2096 to be copied, and has caused the tape recordings of hearings in Civ. Nos. 91-7517 and 94-4457 to be transcribed. The Court has personally redacted with a black magic marker those portions of the court documents and the transcripts that would reveal the plaintiffs' identity ("the original redactions"), and has made a copy of these redacted files ("the redacted copy"). The original redactions shall be placed in the original files in these four cases (since one might still be able to see the names through the magic marker), and the original files shall remain impounded.

3. The redacted copies shall be placed in new redacted files, marked by the appropriate civil number and the word "REDACTED" (for instance, No. 91-7517-REDACTED). Only the redacted files shall be made available to the public.

4. For each of the cases that were filed with the plaintiff using his true name-Suffolk Civ. Nos. 91-7517, 94-4457, and 94-2787-a new docket shall be prepared by the Clerk of Court replacing the name of the plaintiffs in all instances with a pseudonym, e.g. John Doe.

5. This Order is stayed until February 15, 2002. Counsel for each plaintiff, through arrangement with the Assistant Clerk, may review the redacted file in his case to see the proposed redactions and, no later than February 12, 2002, may file written objections to the manner in which the redactions have been made, with specific requests for additional redactions.

6. The Clerk of Court shall cause this Memorandum and Order to be delivered forthwith, by first class mail or other appropriate means, to all counsel of record in this case and in the impounded cases.

*11 7. A copy of this Memorandum and Order shall also be placed in the case file of each of the impounded cases.

**All Citations**

Not Reported in N.E.2d, 14 Mass.L.Rptr. 315, 2002 WL 202464

---

Footnotes

1     Initially, the Globe asked to terminate the impoundment orders in nine cases-the five identified above, as well as Civ. Nos. 94-5409, 98-5840, 99-676, and 94-5821. At the initial hearing, however, the Globe withdrew its request as to Civ.

No. 94-5409. This Court referred the Globe's motion as to Civ. Nos. 98-5840 and 99-676 to Associate Justice Constance Sweeney, since all civil cases involving a defendant in these two cases had been specially assigned to her by Chief Justice Suzanne DelVecchio. The Globe withdrew its request as to Civ. No. 94-5821 once it learned from the Court that this case involved an allegation of sexual harassment by one adult against another, and not a claim of child sexual abuse by a member of the clergy.

2   One of the impounded cases-Civ. No. 94-4457-is a complaint for settlement approval on behalf of a minor, but the settlement resolves allegations involving sexual abuse of a child by a member of the clergy.

3   This Court makes that inference because many different judges issued these findings but the language was nearly identical in all the findings. Since the plaintiffs and plaintiffs' counsel differed among these cases but all five cases had one defense counsel in common, it is reasonable to infer that this defense counsel submitted the proposed language for the impoundment orders. I was not the judge in the any of the five impounded cases.

4   This Court recognizes that the Supreme Judicial Court, in a footnote in *H.S. Gere & Sons, Inc. v. Frey*, 400 Mass. 326, 330 n. 8 (1987), declared that the standard of overriding necessity was applied in *George W. Prescott Publ. Co.* only because that case involved a public official. As discussed below, *infra* at pages 8-9, impoundment was ordered in *H.S. Gere & Sons, Inc.* and rejected in *George W. Prescott Publ. Co.*, not because the analytical standard was different in these two cases but because the public had a strong interest in the latter case to examine the court records to explore a possible misuse of authority by a public official. Since the public official's records were of such substantial legitimate concern to the public, the privacy interest that would be needed to override the public's interest and justify impoundment would have had to be unusually formidable, which it was not in that case.

5   This Court has been told that the clergy defendants no longer hold pastoral positions, but has no independent knowledge as to whether this is true. Indeed, this Court does not know where the individual defendants are now, what they are doing for a living, or even if they are still alive.

6   Civ. No. 95-2096 was filed with the plaintiff using a pseudonym, so the only document in that file that required redaction was the plaintiff's affidavit in support of his use of a pseudonym, which now has been redacted.

---

**End of Document**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.