# Ex. B

Douglas J. Newborn, SBN 029688/PAN 66860
**DOUG NEWBORN LAW FIRM, PLLC**
7315 N. Oracle Rd., Suite 230
Tucson, AZ 85704
Phone: (520) 585-5525
Fax:    (855) 365-3158
courts@dougnewbornlawfirm.com
*Attorneys for Russell Blattberg ("Trust Beneficiary," "Plaintiff," and "Petitioner")*

Ian Christopherson, Esq. NV Bar No. 3701
726 S. Casino Center Blvd, Suite 210
Las Vegas, NV 89101
(702) 372-9649
iclaw44@gmail.com
*Co-Counsel for Russell Blattberg (to eventually appear pro hac vice)*

## SUPERIOR COURT OF ARIZONA, PIMA COUNTY

| | |
|---|---|
| In the Matter of the Estate of:<br>Russell N. Blattberg 2000 Irrevocable Trust<br><br>                    An Adult. | CASE NO. PB20201325 |
| Russell Blattberg, Trust Beneficiary<br><br>Plaintiff<br>vs.<br>Robert Fleming, Esq., Former Successor Trustee, in his individual and fiduciary capacity; Jane Doe, spouse of Fleming, regarding her community property interest; and Fleming & Curti, P.L.C., an Arizona Professional LLC and Former Successor Trustee<br><br>Defendants. | **PETITION & COMPLAINT for:**<br>1. **Extrinsic Fraud;**<br>2. **Conspiracy to Commit Extrinsic Fraud;**<br>3. **Common Law Fraud;**<br>4. **Conspiracy to Commit Common Law Fraud;**<br>5. **Breach of Fiduciary Duty;**<br>6. **Conspiracy to Commit Breach of Fiduciary Duty;**<br>7. **Tortious Interference with Inheritance;**<br>8. **Tortious Interference with Contract; and**<br>9. **Negligence**<br>**AND**<br>**DECLARATORY ACTION**<br>(The Honorable Lisa Schriner Lewis) |

Russell Blattberg ("Russell"), Trust Beneficiary and Plaintiff/Petitioner, hereby files his *Petition & Complaint* against Defendants: Robert Fleming, Esq. ("Fleming"); Jane Doe (spouse of Fleming); and Fleming & Curti, P.L.C. ("Fleming & Curti"), and alleges as follows. Russell also seeks a *Declaratory Action* that Defendants were provided an opportunity to settle within their policy limits, refused to settle, and have therefore proceeded as though any applicable insurance policy is "open."

Russell's *Verification* is attached as **Exhibit A**.

### Parties, Jurisdiction, and Venue

1.  Plaintiff Russell is a Trust Beneficiary of the original Russell N. Blattberg 2000 Irrevocable Trust (the "2000 Trust"). **Exhibit B**.

2.  At all material times herein, Russell did not live in Arizona ("AZ").

3.  Russell lives in Nevada ("NV").

4.  At all material times herein, Defendant Fleming lived in AZ.

5.  Defendant Fleming is an attorney licensed in the State of AZ.

6.  Defendant Fleming filed pleadings in this case in 2020, stating that he was the "Trustee of the Russell N. Blattberg 2000 Irrevocable Trust." *See Petition to Modify Trust* filed October 7, 2020.

7.  Jurisdiction is proper over Defendant Fleming because Fleming caused events to occur in AZ, Fleming lives in AZ, and/or Fleming is a licensed attorney in AZ.

8.  Defendant Jane Doe, upon information and belief, is the spouse of Defendant Fleming.

9.  Defendant Jane Doe, upon information and belief, lived in AZ during all material times herein.

10. Defendant Fleming's actions resulted in a benefit to his marital community as he was paid by Fleming & Curti, which was paid by funds from the 2000 Trust, which therefore benefited Jane Doe.

11. Jurisdiction is proper over Jane Doe as she lived in AZ during all relevant times and her marital community benefited from the Defendants' actions.

12. Defendant Fleming was and/or is either a partner, owner, employee, and/or agent of Defendant Fleming & Curti during the relevant actions herein.

13. Defendant Fleming's alleged actions herein benefited himself personally and also benefited Fleming & Curti.

14. Defendant Fleming & Curti is liable for Defendant Fleming's actions and therefore all allegations and Counts 1-9 herein are against both Defendant Fleming & Curti and Defendant Fleming.[1]

15. Defendant Fleming & Curti succeeded Defendant Fleming as Trustee per the *Order to Modify Trust* dated December 10, 2020 (and the underlying *Petition to Modify Trust*, Exhibit B, Article II(A)). *See* Court file.

16. Jurisdiction is proper over Defendant Fleming & Curti because Defendant Fleming & Curti is an AZ Professional LLC doing business in AZ.

17. Jurisdiction is also proper over Defendant Fleming & Curti because Defendant Fleming & Curti became Successor Trustee of the 2000 Trust.

18. Jurisdiction and Venue are proper because the 2000 Trust has already been the subject of petitions and orders by this Court and the Defendants herein have caused actions in this Court that have availed themselves of this Court's jurisdiction and venue.

19. This case is not subject to mandatory and/or compulsory arbitration or FASTAR.

20. This case should be assigned to Tier 3 per ARCP 26.2((b)(3), (c)(2), and/or (c)(3)(C)).

---

[1] *See* A.R.S. § 12-2506(D)(1 and 2).

21. This case is not subject to the disclosure requirements of A.R.S. § 12-2601 *et seq.* because exert testimony is not necessary to prove the licensed professional's standard of care or liability for the allegations herein.

22. Plaintiff demands a jury trial under A.R.S. § 14-1306(A) and a separate demand under ARPP 29 will be filed.

## General Allegations

23. The above allegations are fully incorporated herein.

24. Russell is the son of Julie Breskin and Paul Blattberg.

25. Donor Paul Blattberg died on August 21, 2001. *See Petition to Modify Trust,* ¶ 1, filed October 7, 2020.

26. Julie Breskin, per the *Petition to Modify Trust,* was listed by Fleming as a Trust Protector. *Id.* at ¶ 4 and Exhibit A, Article II(A).

27. Exhibit A of the October 7, 2020, *Petition to Modify Trust* is the Restatement of the Russell N. Blattberg 2000 Irrevocable Trust (the "Restated 2000 Trust"). *See* Court file.

28. Julie Breskin is referred to as the Trust Protector in the Court's December 10, 2020, *Minute Entry. See* Court file.

29. Julie Breskin and Paul Blattberg created the 2000 Trust and are the "Donors". **Exhibit B,** first para.

30. The 2000 Trust "shall be irrevocable and unamendable." **Exhibit B,** Art. 1.

31. The 2000 Trust exists "for the benefit of RUSSELL N. BLATTBERG ..." **Exhibit B,** Art. 1.

32. Art. 2.2.2(i) of the 2000 Trust states "the Trustee shall distribute to Russell, free of trust, upon Russell's written request, at the times hereunder specified the following proportions of the then remaining principal of the trust

...." (i) fifty percent (50%) of the remaining principal of the trust upon Russell's request at any time when Russell attains the age of the 35 or more years."

33. Russell turned 35 on December 8, 2023.

34. After reaching the age of 35, Russell demanded his 50% principle of the 2000 Trust.

35. Fleming did not distribute 50% of the 2000 Trust principle as directed in the 2000 Trust.

36. Upon information and belief, in 2014, Julie filed an action in Massachusetts ("MA") seeking to modify the 2000 Trust and to have Russell undergo an "Independent Medical Examination." **Exhibit C.**

37. Upon information and belief, Julie is a specialist in child psychology.

38. **Exhibit C** states, "... Russell's erratic and self-destructive behavior has made it clear that some provisions of the Trust need to be amended, to provide for Russell's long term safety and welfare." *Id.* at first para.

39. Further, there was a court-appointed guardian ad litem, who "reported concerns as to Russell's competency ..." *Id.* at second para.

40. Further, per Julie "... Russell's mental capacity is central to the rationale for Petitioner's filing this action ..." *Id.* at third para.

41. Russell filed a *Motion to Dismiss*. **Exhibit D.**

42. Russell's *Motion to Dismiss* was granted as to ripeness. *Id.*

43. Therefore, as of mid-2016, Julie petitioned a Court to modify the terms of the 2000 Trust to prevent Russell from obtaining his mandatory 50% share when he reached 35 years old and the Court she chose denied her petition.

44. Julie then began forum shopping for a successor trustee in another State than MA.

45. Upon information and belief, Julie contacted Fleming in 2017.

46. Fleming became the Trustee of the 2000 Trust on January 23, 2018. *See Petition to Modify Trust*, Exh. A, Art. 1, second para.

47. When Julie began discussions with Fleming in 2017, Julie did not live in Arizona.

48. When Julie began discussions with Fleming in 2017, Russell did not live in Arizona.

49. When Julie began discussions with Fleming in 2017, no Donor, Trustee, Trust protector, or Trust beneficiary lived in Arizona.

50. When Julie began discussions with Fleming in 2017, there were no Trust assets in Arizona.

51. When Julie began discussions with Fleming in 2017, Arizona had no jurisdiction or authority over anything involving the 2000 Trust.

52. When Julie began discussions with Fleming in 2017, Fleming knew Julie did not live in Arizona.

53. When Julie began discussions with Fleming in 2017, Fleming knew Russell did not live in Arizona.

54. When Julie began discussions with Fleming in 2017, Fleming knew that no Donor, Trustee, Trust protector, or Trust beneficiary lived in Arizona.

55. When Julie began discussions with Fleming in 2017, Fleming knew that there were no Trust assets in Arizona.

56. When Julie began discussions with Fleming in 2017, Fleming knew there was no legal basis to bring any court action in Arizona.

57. When Julie began discussions with Fleming in 2017, Fleming knew jurisdiction was improper in Arizona and that jurisdiction was only proper in MA (where Julie lived), NV (where Russell and the other Trust Beneficiaries (Russell's minor children) lived), or anywhere that the Trust owned assets (upon information and belief, MA and/or CA under the management of David Breskin (who lives in CA)).

58. Defendant's *Petition to Modify Trust* does not allege that jurisdiction and venue are proper in Arizona.

59. When Julie began discussions with Fleming in 2017, Fleming knew or should have known that Julie attempted to modify the 2000 Trust in Massachusetts between 2014-2016 and failed.

60. When Julie began discussions with Fleming in 2017, Fleming knew he did not have the right to modify the terms of the 2000 Trust to change the 2000 Trust from the mandatory distributions (to Russell when he reached 35 and 40 years old) to purely discretionary distributions, unless he received Russell's express written permission or Court approval supported by specific findings. *See* A.R.S. §§ 14-10819(A) and 14-10411.

61. On January 30, 2020, someone by the initials "NTR" at Fleming & Curti had a .9 hour phone call with Julie Breskin. *See Affidavit of Fees*, pg. 98, filed on October 9, 2024. *See image below.*

| 1/30/2020 | NTR | Call to Julie Breskin (and separate conversation re: Russell's current status) | 0.90 | $45.00 | $45.00 |
|---|---|---|---|---|---|

62. Also on January 30, 2020, Robert Fleming had a .65 hour call with Julie Breskin. *Id.*

| 1/30/2020 | RBF | Call to Julie Breskin | 0.65 | $375.00 | $243.75 |
|---|---|---|---|---|---|

63. On February 12, 2020, Fleming & Curti produced a time entry that states, "Review status regarding decanting trust ..." *Id.* at pg. 100.

| 2/12/2020 | KAK | Review status regarding decanting trust; note to attorneys | 0.10 | $180.00 | $18.00 |
|---|---|---|---|---|---|

64. Although the specific word "decant" is not mentioned in any Arizona statute, the analysis of whether a Trust can be decanted is found in A.R.S. § 14-10819.

65. On October 7, 2020, Fleming filed the *Petition to Modify Trust. See* Court File.

66. The *Petition to Modify Trust* (the "*Petition*") decants the 2000 Trust.

67. The *Petition* failed to include the original 2000 Trust.

68. The *Petition* only attached as an exhibit the Restated 2000 Trust.

69. The *Petition* failed to inform the Court that Russell had mandatory distribution rights at ages 35 and 40 in the original 2000 Trust. *Compare* **Exhibit B**, Art. 4.2.2(i) with the *Petition*.

70. A.R.S. § 14-1310 states, "... each document filed with the court or furnished to an interested person under this title including ... petitions ... inventories and accounts shall be deemed to include an oath, affirmation or statement to the effect that its representations are true as far as the person executing or filing it knows or is informed."

71. A.R.S. § 14-1310 further states, "[e]ach document filed with the court or furnished to an interested person under this title is material and may subject the person executing or filing such document to penalties relating to perjury and subornation of perjury."

72. Fleming's *Petition* states, "[A.R.S.] § 14-10819(A) and (E) permits the Trustee of an irrevocable trust to restate the Trust, under certain conditions." *Id.* at ¶ 2.

73. A.R.S. § 14-10819(A) states,

> Unless the terms of the trust instrument expressly provide otherwise, a trustee who has the discretion under the terms of a testamentary instrument or irrevocable inter vivos agreement to make distributions, regardless of whether a standard is provided in the trust instrument to or for the benefit of a beneficiary of the trust, may exercise without prior court approval the trustee's discretion by appointing part or all of the trust property in favor of a trustee of another trust if the exercise of this discretion: (1) Does not reduce any fixed nondiscretionary income payment to a beneficiary; (2) Does not alter any nondiscretionary annuity or unitrust payment to a beneficiary; (3) Is in favor of the beneficiaries of the trust; (4) Results in any ascertainable standard applicable for distributions from the trust being the same or more restrictive standard applicable for distributions from the recipient trust when the trustee exercising the power to appoint trust property described in this subsection is a possible beneficiary under the standard;

(5) Does not adversely affect the tax treatment of the trust, the trustee, the settlor or the beneficiaries; and (6) Does not violate the limitations on validity under sections 14-2901 and 14-2905.

74. A.R.S. § 14-10819(A)(4-6) are not applicable here.

75. Upon information and belief, there are no annuities or unitrust payments and therefore A.R.S. § 14-10819(A)(2) is also not applicable here.

76. The statutory construction of A.R.S. § 14-10819 requires that if any subsection in A.R.S. § 14-10819(A)(1-6) is not met, then restatement under A.R.S. § 14-10819 is not allowed.

77. The *Petition* violates A.R.S. § 14-10819(A)(1) because the proposed Restated 2000 Trust reduced "fixed nondiscretionary income payment[s] to" Russell (the only named beneficiary of the 2000 Trust).

78. Fleming knew the Restated 2000 Trust failed to comply with A.R.S. § 14-10819(A)(1).

79. Fleming's *Petition* did not inform the Court that the Restated 2000 Trust did not comply with A.R.S. § 14-10819(A)(1).

80. Instead, Fleming's *Petition* falsely claimed that the Restated 2000 Trust did comply with A.R.S. § 14-10819(A)(1).

81. Fleming purposefully failed to inform the Court in the *Petition* that the Restated 2000 Trust did not comply with A.R.S. § 14-10819(A)(1).

82. Fleming signed the Restated 2000 Trust (*Petition*, Exh. A), wherein on the same page as his signature (page 14 of the Restated 2000 Trust), Art. IX(D) states that Fleming, "avers and states that this restatement of the trust: (1) Does not reduce any fixed non-discretionary income payment to a beneficiary."

83. Fleming knew the statement he signed referenced in allegation ¶ 82 was false when presented to the Court.

84. Fleming's signed and sworn statement referenced in allegation ¶ 82 was a material issue regarding the purpose of the 2000 Trust and the Restated 2000 Trust.

85. A.R.S. § 13-2702(A) states, "A person commits perjury by making either: (1) A false sworn statement in regard to a material issue, believing it to be false; [or] (2) A false unsworn declaration, certificate, verification or statement in regard to a material issue that the person subscribes as true under penalty of perjury, believing it to be false."

86. A.R.S. § 13-2702(B) states that perjury is a "class 4 felony."

87. Fleming committed perjury regarding his assertion to the Court that A.R.S. § 14-10819(A)(1) was satisfied through the Restated 2000 Trust.

88. If Fleming presented the *Petition* to Russell, Fleming knew the statement he signed referenced in allegation ¶ 82 was false when presented to Russell.

89. If Fleming presented the *Petition* to Russell, Fleming did not inform Russell that the statement referenced in ¶ 82 was false when presented to Russell.

90. The *Petition* violates A.R.S. § 14-10819(A)(3) because the proposed Restated 2000 Trust is not in favor of Russell, the main Trust Beneficiary, as it changes his distributions from mandatory under the 2000 Trust to discretionary under the Restated 2000 Trust.

91. Fleming knew the Restated 2000 Trust did not comply with A.R.S. § 14-10819(A)(3).

92. Fleming did not inform the Court that the Restated 2000 Trust failed to comply with A.R.S. § 14-10819(A)(3).

93. Instead, Fleming's *Petition* informed the Court that the Restated 2000 Trust did comply with A.R.S. § 14-10819(A)(3).

94. Fleming purposefully failed to inform the Court that the Restated 2000 Trust failed to comply with A.R.S. § 14-10819(A)(3).

95. Fleming signed the Restated 2000 Trust (*Petition*, Exh. A), wherein on the same page as his signature (page 14 of the Restated 2000 Trust), Art. IX(D) states that Fleming, "avers and states that this restatement of the trust: ... (3) Is in favor of the beneficiaries of the trust."

96. Fleming knew the statement he signed referenced in allegation ¶ 95 was false when presented to the Court.

97. Fleming committed perjury regarding his assertion to the Court that A.R.S. § 14-10819(A)(3) was satisfied through the Restated 2000 Trust.

98. If Fleming presented the *Petition* to Russell, Fleming knew the statement he signed referenced in allegation ¶ 95 was false when presented to Russell.

99. If Fleming presented the *Petition* to Russell, Fleming did not inform Russell that the statement referenced in ¶ 95 was false when presented to Russell.

100. Fleming's *Petition* states that, "The purpose of this Restatement is to provide for the appointment of successor trustees, to substitute Arizona law as the governing law of this Trust, and to address changes in federal estate taxation law that have occurred in the years following 2000." *Id.* at ¶ 2.

101. Fleming did not inform the Court that another purpose of the Restated 2000 Trust was to decant the Trust, as evidenced by the time entries on January 30 and February 12, 2020. *See* ¶¶ 61-63 above.

102. After Fleming was hired to become Successor Trustee in 2017, neither Julie Breskin or any of her family members were Trustees of the 2000 Trust or the Restated 2000 Trust.

103. Despite ¶ 102 above, Fleming & Curti took orders from Julie and/or Julie's family members regarding distributions to Russell.

PB20201325 | Petition & Complaint and Declaratory Action

104. Per communications from Fleming & Curti staff to Russell, on or about July 21, 2022, "Julie talked with her brother and *they would not support* a large distribution of funds to purchase a home" and "*Without their support*, we do not have enough to purchase a home" and "I don't know the inner workings of the trust *they manage*." (emphasis added).

105. In the same above communication, where Russell is requesting the Trust pay for an attorney to represent him, "Robert [Fleming] is not comfortable with the ambiguity that is being insisted on. We would have no way of knowing what we were paying for, *which is career ending for a trustee to do*. We are still open to paying attorney fees but need to be able to see what we are paying for." (emphasis added).

106. In the same above communication, Fleming & Curti staff informed Russell that, "In our conversation, *he [Fleming] made it clear that he could not disclose how your case would be addressed*." (emphasis added).

107. In a communication between Fleming & Curti staff to Russell on December 13, 2021, Fleming & Curti staff states, "On a side note, I am forwarding you an email sent to me by Julie. *She has sent our office fruit baskets in previous years, but this year she sent a gift certificate directly to me. I feel kind of weird about it* so am forwarding it to you to do as you would like." (emphasis added).

108. However, in a communication from Julie to Russell on January 18, 2023, Julie states, "*I have no control over timing of transfers*, so I'm a bit stressed out as I've been put in the middle. *However, I was able to chase down folks, and was finally able to ascertain that wire should go out late today or first thing tomorrow*." (emphasis added).

109. The statement by Julie to Russell in ¶ 108 above is not consistent with the statements by Fleming & Curti staff to Russell in ¶ 104 above.

110.  Per *Shriners Hosps. for Crippled Children v. Gardiner*, 152 Ariz. 527, 528 (1987),

> In Arizona, a trustee has the duty to "observe the standard in dealing with the trust assets that would be observed by a prudent man dealing with the property of another." A.R.S. § 14-7302. If the trustee breaches that responsibility, he is personally liable for any resulting loss to the trust assets. Restatement (Second) of Trusts §§ 201, 205(a). A trustee breaches the prudent man standard when he delegates responsibilities that he reasonably can be expected personally to perform. Restatement (Second) of Trusts § 171.

111.  *Shriners* also quotes the Restatement (Second) of Torts § 171, "The trustee is under a duty to the beneficiary not to delegate to others the doing of acts which the trustee can reasonably be required personally to perform." *Id.* at 529.

112.  A.R.S. § 14-10801 states, "On acceptance of a trusteeship, the trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries and in accordance with this chapter."

113.  The 2000 Trust was created for the benefit of Russell. *See* ¶ 31 above.

114.  Therefore, the purpose of the 2000 Trust was to benefit Russell.

115.  The purpose of the Restated 2000 Trust was not to benefit Russell in the same way that the 2000 Trust benefited Russell.

116.  A.R.S. 14-10813(A) states, "... a trustee shall keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests."

117.  The *Petition to Modify Trust*, even if provided to Russell, does not provide enough information "of the material facts necessary" for Russell to protect his interests. *Id.*

118.  The *Petition* doesn't provide Russell "the material facts necessary" because the *Petition* misstates the purpose of the Restated 2000 Trust and

contains knowingly false statements that both A.R.S. § 14-10819(A)(1 and 3) were satisfied through the Restated 2000 Trust. *Id.*

119. A.R.S. § 14-10812 states, "A trustee shall take reasonable steps to compel a former trustee or other person to deliver trust property to the trustee and to redress a breach of trust known to the trustee to have been committed by a former trustee."

120. A.R.S. § 14-10809 states, "A trustee shall take reasonable steps to take control of and protect the trust property."

121. Fleming became the Trustee on January 23, 2018. *See* ¶ 46 above.

122. Upon information and belief, the 2000 Trust contained approximately $3,000,000.00 when Fleming became Trustee.

123. Upon information and belief, the Restated 2000 Trust contained at least $3,000,000.00 when Fleming and Curti filed their *Inventory* on October 9, 2024. *See* Court file.

124. Fleming & Curti's *Inventory* states that the total assets in the Restated 2000 Trust are $206,672.36. *Id.*

125. The *Inventory* states that $40,000.00 was for "Transfer for taxes." *Id.*

126. Someone of Fleming and/or Fleming & Curti's knowledge and experience in Trust accounting and taxes would know that a $40,000.00 tax bill on a $206,672.36 Trust is not normal.

127. Upon information and belief, Fleming and/or Fleming & Curti knew the Restated 2000 Trust contained more than $206,672.36.

128. Fleming and/or Fleming & Curti failed to "take reasonable steps to take control of and protect the trust property" by not acquiring the other nearly $2.8M that existed in Trust assets. *See* A.R.S. § 14-10809.

129. A.R.S. § 14-10813(B)(2) states, "A trustee: Within sixty days after accepting a trusteeship, shall notify the qualified beneficiaries of the acceptance and of the trustee's name, address and telephone number."

130. Upon information and belief, Fleming failed to notify Russell that he became Trustee within 60 days of January 23, 2018.

131. A.R.S. § 14-10813(C) states, "A trustee shall send to the distributees … of trust income or principal … at least annually … a report of the trust property, liabilities, receipts and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets and, if feasible, their respective market values."

132. Upon information and belief, Fleming failed to comply with A.R.S. § 14-10813(C) during the January 2018-2019 year he was Trustee.

133. Upon information and belief, Fleming failed to comply with A.R.S. § 14-10813(C) during the January 2019-2020 year he was Trustee.

134. Upon information and belief, Fleming failed to comply with A.R.S. § 14-10813(C) during the January 2020 – December 2020 year he was Trustee.

135. Upon information and belief, Fleming & Curti failed to comply with A.R.S. § 14-10813(C) during the December 2020 – December 2021 year it was Trustee.

136. Upon information and belief, Fleming & Curti failed to comply with A.R.S. § 14-10813(C) during the December 2021 – December 2022 year it was Trustee.

137. Upon information and belief, Fleming & Curti failed to comply with A.R.S. § 14-10813(C) during the December 2022 – December 2023 year it was Trustee.

138. A.R.S. § 14-10104(B) states, "An organization that conducts activities through employees has notice or knowledge of a fact involving a trust only from the time the information was received by an employee having responsibility to act for the trust or would have been brought to the employee's attention if the organization had exercised reasonable diligence."

139. Fleming's *Petition to Modify Trust* cites A.R.S. § 14-10411. *Id.* at ¶ 3.

140. A.R.S. § 14-10411(A) states that the 2000 Trust, "… may be modified on consent of all of the beneficiaries if the court concludes that modification is not inconsistent with a material purpose of the trust."

141. Fleming did not have Russell's consent to modify the 2000 Trust.

142. The Court did not make a finding in either its December 10, 2020, *Minute Entry*, or the December 10, 2020, *Order*, that Russell consented to the modification of the 2000 Trust.

143. A.R.S. § 14-10411(C) states that, "If not all of the beneficiaries consent to a proposed modification or termination of the trust under subsection A, the modification or termination may be approved by the court if the court is satisfied that: (1) If all of the beneficiaries had consented, the trust could have been modified or terminated under this section; (2) The interests of a beneficiary who does not consent will be adequately protected."

144. Again, Fleming did not have Russell's consent to modify the 2000 Trust; therefore, the 2000 Trust could only modified under A.R.S. § 14-10411(C).

145. Modification under A.R.S. § 14-10411(C)(1) cannot occur because the modification that occurred in the Restated 2000 Trust "is not consistent with a material purpose of" the 2000 Trust because the material purpose of the 2000 Trust was to provide a 50% mandatory distribution of principle to Russell when he reached 35 years old (and the remainder of the Trust corpus when Russell reached 40 years old). *Citing* A.R.S. § 14-10411(A)

146. Modification under A.R.S. § 14-10411(C)(2) cannot occur because, by making the distributions in the Restated 2000 Trust purely discretionary, as compared to the required mandatory distributions to Russell in the original 2000 Trust, "[t]he interests of a beneficiary who [did] not consent" (i.e. Russell) is not "adequately protected." *Id.*

147. Despite repeated requests, the mandatory distribution per **Exhibit B**, Art. 4.2.2(i). have not occurred.

148. This constitutes, at a minimum, $1.5 million in damages (plus pre-judgment interest) to Russell as a result of the failure to distribute 50% of the 2000 Trust principal when Russell reached 35 years old in December 2023.

149. For Russell to recover punitive damages, Russell must prove by clear and convincing evidence that Defendants' "misconduct was intended to cause harm."[2]

150. "Punitive damages are not to compensate plaintiff for the loss sustained, but rather to punish defendant for his conduct. Such damages are applicable where there is a 'reckless indifference to the interests of others.'"[3]

151. The allegations contained herein, if and when proved, will form the basis for punitive damages.

152. All Counts below are made against all Defendants.

## Count 1: Extrinsic Fraud[4]

153. The above allegations are fully incorporated herein.

154. "Fraud on the court is a variety of fraud that is 'extrinsic ...'"[5]

155. "Fraud on the court distorts the judicial process itself, as by intentionally concealing the existence of the litigation from an interested

---

[2] *See* RAJI (Civil) 8th, Personal Injury Damages 4, *Punitive Damages*; *see also* RAJI (Civil) 7th, *Intentional Torts Instructions*, para. 1 ("the damages available for intentional torts are the same as those that can be for negligent conduct. *See* Personal Injury Damages 1 (Measure of Damages) and 4 (Punitive Damages)").

[3] *Nielson v. Flashberg*, 101 Ariz. 335, 341 (Ariz. 1966).

[4] Count 1 is the subject of a *Complaint* and therefore requires service under the Rules of Civil Procedure.

[5] *In re Garcia*, 576 P.3d 117 ¶ 11, 2025 Ariz. App. LEXIS 110, *6 (App. 2025).

party and thus preventing a 'real contest' or 'fair submission' of the controversy—or even wholly avoiding a trial on the issue."[6]

156. Here, Defendants' misstatements in the underlying *Petition to Modify Trust* did not provide Russell (assuming Russell even received the *Petition*), or the Court, with enough information to ensure Russell's interested were protected regarding the modifications to the 2000 Trust.

157. Defendants' *Petition to Modify Trust*, through both its acts of omission and acts of commission, committed extrinsic fraud.

158. As a result of Defendants' actions, Russell suffered damages.

159. In addition to consequential and/or special damages, punitive damages are appropriate.

### Count 2: Conspiracy to Commit Extrinsic Fraud[7]

160. The above allegations are fully incorporated herein.

161. "For a civil conspiracy to occur two or more persons must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages."[8]

162. Upon information and belief, Julie Breskin and Fleming conspired to have the 2000 Trust modified by not informing the Court, or Russell, of their intention to alter the mandatory distributions to purely discretionary.[9]

163. Such action constitutes extrinsic fraud.

164. Julie Breskin and Fleming's actions, through their acts of omission and commission in getting the 2000 Trust modified, either "accomplish[ed] an

---

[6] *Id.* (citations omitted).

[7] Count 2 is the subject of a *Complaint* and therefore requires service under the Rules of Civil Procedure.

[8] *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 306 (App. 1988).

[9] "... not all members of a conspiracy need be named defendants for one member to be found liable." *Id.*

unlawful purpose" or "accomplish[ed] a lawful objective by unlawful means, causing damages."[10]

165. As a result of Julie and Fleming's actions, Russell suffered damages.

166. In addition to consequential and/or special damages, punitive damages are appropriate.

## Count 3: Common Law Fraud[11]

167. The above allegations are fully incorporated herein.

168. A.R.S. § 14-1106 states, "If fraud has been perpetrated in connection with any proceeding or in any statement filed under this title or if fraud is used to avoid or circumvent the provisions or purposes of this title, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person, other than a bona fide purchaser, benefiting from the fraud, whether innocent or not."

169. Also, "Constructive fraud is defined as a breach of a legal or equitable duty which, without regard to moral guilt or intent of the person charged, the law declares fraudulent because the breach tends to deceive others, violates public or private confidences, or injures public interests."[12]

170. Also, fraud occurs when there is: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7)

---

[10] *Id.*

[11] Count 3 is the subject of a *Complaint* and therefore requires service under the Rules of Civil Procedure.

[12] *Taeger v. Catholic Family & Community Servs.*, 196 Ariz. 285, 289 ¶ 9 (App. 1999). Also, "[c]onstructive fraud in this context means that a negligent omission of a regulatory requirement or noncompliance with a regulation causes prejudice to persons whom the regulation was intended to protect ..." *Id.*

the hearer's reliance on its truth; (8) the right to rely on it; and (9) consequent and proximate injury.[13]

171. "A representation": the *Petition to Modify Trust* has both acts of omissions and commissions that failed to notify both the Court and Russell that the 2000 Trust was being altered in a material way.

172. "It's falsity": the *Petition to Modify Trust* falsely claims that Russell's interests are being protected.

173. "It's materiality": the *Petition to Modify Trust* is material as it formed the basis for the Court to allow Fleming to modify the 2000 Trust.

174. "Fleming's knowledge of its falsity": Fleming knew that the *Petition to Modify Trust* contained material misstatements and failed to provide all the necessary information to both the Court and Russell.

175. "Fleming's intent that it be acted upon by the recipient in the manner reasonably contemplated": by filing the *Petition to Modify Trust*, Fleming intended that the Court allow him to modify the Trust, which is exactly what the Court did.

176. "The hearer's ignorance of its falsity": the Court was ignorant of the falsities in the *Petition to Modify Trust*.

177. "The hearer's reliance on its truth": the Court relied on the truth of the *Petition to Modify Trust* proffered by Fleming.

178. "The right to rely on it": The Court had a right to rely on the *Petition to Modify Trust* proffered by Fleming.

179. "Consequent and Proximate Injury": Russell was consequently and proximately injured as a result of the Court's reliance on the assertions in the *Petition to Modify Trust* Fleming filed.

180. As a result of Defendants' actions, Russell suffered damages.

---

[13] *Echols v. Beauty Built Homes*, 132 Ariz. 498, 500 (1982).

181. In addition to consequential and/or special damages, punitive damages are appropriate.

## Count 4: Conspiracy to Commit Common Law Fraud[14]

182. The above allegations are fully incorporated herein.

183. "For a civil conspiracy to occur two or more persons must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages."[15]

184. Upon information and belief, Julie Breskin and Fleming conspired to have the 2000 Trust modified by not informing the Court, or Russell, of their intention to alter the mandatory distributions to purely discretionary.[16]

185. Such actions constitute common law and/or constructive fraud.

186. Julie Breskin and Fleming's actions, through their acts of omission and commission in getting the 2000 Trust modified, either "accomplish[ed] an unlawful purpose" or "accomplish[ed] a lawful objective by unlawful means, causing damages."[17]

187. As a result of Julie and Fleming's actions, Russell suffered damages.

188. In addition to consequential and/or special damages, punitive damages are appropriate.

## Count 5: Breach of Fiduciary Duty[18]

189. The above allegations are fully incorporated herein.

---

[14] Count 4 is the subject of a *Complaint* and therefore requires service under the Rules of Civil Procedure.

[15] *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 306 (App. 1988).

[16] "... not all members of a conspiracy need be named defendants for one member to be found liable." *Id.*

[17] *Id.*

[18] Count 5 is the subject of a *Petition* and therefore requires notice and a hearing under the Rules of Probate Procedure.

190. Per A.R.S. § 14-11001(A), "A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust."

191. Fleming was Trustee of the 2000 Trust.

192. Russell was the main beneficiary of the 2000 Trust.

193. As Trustee, Fleming owes Russell fiduciary duties.

194. The actions detailed herein demonstrate that Fleming breached his fiduciary duties to Russell.

195. As a result of Defendants' actions, Russell suffered damages.

196. Russell is entitled to compensation for his damages per A.R.S. § 14-11001(B) and any other applicable statute, case, rule, or relevant legal authority.

197. "A breach of fiduciary duty is a tort. A tortfeasor is liable for all damages that occur as a result of the commission of the tort."[19]

198. In addition to consequential and/or special damages, punitive damages are appropriate.[20]

## Count 6: Conspiracy to Commit Breach of Fiduciary Duty[21]

199. The above allegations are fully incorporated herein.

200. "For a civil conspiracy to occur two or more persons must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages."[22]

---

[19] RAJI (Civil) 7th, Commercial Torts 3, *Fiduciary Duty*, Comment 1, *citing Elliott v. Videan*, 164 Ariz. 113, 119 (1990).

[20] "Punitive damages may be awarded for a breach of fiduciary duty ..." *Id.* fn. 2, *citing Jerman v. O'Leary*, 145 Ariz. 397, 402 (App. 1985).

[21] Count 6 is the subject of a *Petition* and therefore requires notice and a hearing under the Rules of Probate Procedure.

[22] *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 306 (App. 1988).

201.   Upon information and belief, Julie Breskin and Fleming conspired to have the 2000 Trust modified by not informing the Court, or Russell, of their intention to alter the mandatory distributions to purely discretionary.[23]

202.   Such actions constitute a breach of fiduciary duty.

203.   Julie Breskin and Fleming's actions, through their acts of omission and commission in getting the 2000 Trust modified, either "accomplish[ed] an unlawful purpose" or "accomplish[ed] a lawful objective by unlawful means, causing damages."[24]

204.   As a result of Julie and Fleming's actions, Russell suffered damages.

205.   In addition to consequential and/or special damages, punitive damages are appropriate.

### Count 7: Tortious Interference with Inheritance[25]

206.   The above allegations are fully incorporated herein.

207.   A claim for tortious interference with inheritance requires a plaintiff to prove: (1) a reasonable expectation of receiving an inheritance; (2) the defendant committed an intentional and independent legal wrong; (3) the defendant's purpose was to interfere with the plaintiff's inheritance; (4) the defendant's conduct actually caused the inheritance to fail; and (5) the plaintiff suffered an economic loss.[26]

208.   "A reasonable expectation of receiving an inheritance": the 2000 Trust, which was irrevocable, contains over $3M, and directed that half of that

---

[23] "... not all members of a conspiracy need be named defendants for one member to be found liable." *Id*.

[24] *Id*.

[25] Count 7 is the subject of a *Complaint* and therefore requires service under the Rules of Civil Procedure.

[26] Restatement (Third) of Torts § 19.

$3M be provided to Russell when he turned 35 in December 2023, means that Russell had a reasonable expectation of receiving an inheritance.

209. "Fleming committed an intentional and independent legal wrong": Fleming's *Petition to Modify Trust*, which it's various misstatements that led the Court to allow Fleming to restate the 2000 Trust and remove Russell's mandatory distributions, means that Fleming committed an intentional and independent legal wrong.

210. "Fleming's purpose was to interfere with Russell's inheritance": the entire purpose of the *Petition to Modify Trust* was to prevent Russell from receiving his mandatory distributions. Now that this was accomplished and Russell's distributions are purely discretionary, Fleming's actions interfered with Russell's ability to receive the mandatory distribution at age 35 and 40.

211. "Fleming's conduct actually caused Russell's inheritance to fail": Fleming's *Petition to Modify Trust* was approved by the Court because it contained material misstatements of law and fact that were not known to either the Court or Russell. Consequently, Fleming's conduct actually caused Russell's inheritance to fail.

212. "Russell suffered an economic loss": Russell as suffered at least a $1.5M, plus interest, economic loss as a result of Fleming's *Petition to Modify Trust*.

213. As a result of Defendants' actions, Russell suffered damages.

214. In addition to consequential and/or special damages, punitive damages are appropriate.

//

//

//

//

//

## Count 8: Tortious Interference with Contract[27]

215. The above allegations are fully incorporated herein.

216. The 2000 Trust meets the definition of a contract.

217. "… a contract is a legal obligation on an undertaking supported by a consideration, which obligation may or may not be fiduciary in character."[28]

218. The 2000 Trust was a contract that was fiduciary in character.

219. Fleming (and Fleming & Curti), when assuming the role of Trustee, had a legal obligation on an undertaking supported by the consideration of getting paid to be Trustee.

220. For Defendants to be liable for tortious interference with contract, Russell must prove: (1) Russell had a contractual expectancy regarding the 2000 Trust; (2) Fleming knew about the contractual expectancy; (3) Fleming intentionally interfered with Russell's contractual expectancy with the 2000 Trust which caused a termination of that expectancy to be realized; (4) Fleming's conduct was improper; and (5) Russell suffered damage caused by the termination of Russell's expectancy to be realized regarding the 2000 Trust.[29]

221. "Russell had a contractual expectancy": the 2000 Trust, which was irrevocable, directed that Russell was to receive 50% of the Trust principle when he reached 35 years old, which he did in December 2023.

222. "Fleming was aware of the contractual expectancy": Fleming was aware of the terms of the original 2000 Trust.

---

[27] Count 8 is the subject of a *Complaint* and therefore requires service under the Rules of Civil Procedure.

[28] *Schuster v. Schuster*, 75 Ariz. 20, 28 (Ariz. 1952).

[29] RAJI (Civil) 7th, Commercial Torts 11, *Interference With Contract or Business Expectancy*

223. "Fleming intentionally interfered with Russell's contractual expectancy": Fleming's *Petition to Modify Trust* was an intentional act that interfered with Russell's ability to receive 50% of the Trust principle when he reached 35 years old in December 2023.

224. "Fleming's conduct was improper": both the acts of omission and commission by Fleming in the *Petition to Modify Trust* were improper.

225. "Russell suffered damages": despite Russell's repeated requests to obtain his 50% interest in the Trust principle (a sum of no less than $1.5M), the Trustee will not give Russell this share due to Fleming's improperly approved *Petition to Modify Trust*, thereby causing Russell to suffer damages.

226. In addition to consequential and/or special damages, punitive damages are appropriate.

### Count 9: Negligence[30]

227. The above allegations are fully incorporated herein.

228. At Trustee, Fleming and Fleming & Curti owed Russell a duty.

229. Fleming and Fleming & Curti breached that duty through their actions regarding the filing of the *Petition to Modify Trust*.

230. Due to said breach, Russell was damaged because he no longer had the ability to demand the mandatory 50% distribution of Trust principle when he reached 35 years old in December 2023.

231. Russell was damaged when, on and after December 2023, Russell demanded his 50% mandatory distribution and was informed that it would not occur due to the *Petition to Modify Trust*.

---

[30] Count 9 is the subject of a *Complaint* and therefore requires service under the Rules of Civil Procedure.

### Declaratory Action (A.R.S. § 12-1831 *et seq.*) [31]

232. The above allegations are fully incorporated herein.

233. Plaintiff provided a framework of this *Petition & Complaint* (the "draft *Complaint*") to Defendants prior to the filing of this *Petition & Complaint*.

234. Plaintiff provided at least two draft *Complaints* to Defendants for their review and consideration.

235. Plaintiff also conducted phone call(s) and email exchanges with Defendant in an effort to settle this case prior to the filing of this *Petition & Complaint*.

236. When providing the draft *Complaint* to Defendants, Plaintiff made a policy limit settlement offer.

237. Defendants rejected the policy limit settlement offer.

238. Defendants failed to make any settlement offer.

239. Accordingly, any applicable insurance policies covering the Defendants in this case are now considered "open."

**WHEREFORE**, Plaintiff respectfully requests this Court,

A. For compensatory damages in such an amount as will reasonably and fairly compensate Plaintiff for his injuries resulting therefrom;

B. For punitive damages against all Defendants;

C. For costs and fees of this suit under A.R.S. §§ 12-341, 12-341.01, 14-1105, 14-11001, and any other applicable rule, statute, case, or legal authority;

---

[31] This *Declaratory Action* is the subject of a *Complaint* and therefore requires service under the Rules of Civil Procedure.

D. For a jury trial on any and all triable issues (*see* A.R.S. § 14-1306 and ARPP 29);

E. For a determination that Defendants' insurance policies have been "opened" and Plaintiff/Petitioner is not limited to any applicable policy limits; and

F. For such other and further relief as this Court deems just and proper.

### A.R.S. § 12-2602 Certification

Pursuant to A.R.S. § 12-2601 *et seq.*, the negligence related allegations contained herein **do not** require expert opinion testimony to be filed with the Plaintiff's *Initial Disclosure Statement*. This is because, per A.R.S. § 12-2601(1)(c), expert testimony is not necessary to prove Fleming or Fleming & Curti's "standard of care" regarding the allegations herein, as the "standard of care" in this case is detailed in various statutes and related case law and/or other legal authorities.

Dated **November 14, 2025.**

DOUG NEWBORN LAW FIRM, PLLC

Douglas J. Newborn, Esq.
*Attorney for Russell Blattberg*

**Original** filed on **November 14, 2025,** with:
Clerk of the Pima County Superior Court

**Copies** delivered on **November 14, 2025,** to:

Via email:
Fleming & Curti, P.L.C.
Robert Fleming, Esq.
Jane Doe (Mrs. Fleming)

c/o
Craig Cline, Esq.
Udall Law Firm, LLP
4801 E. Broadway Blvd. Ste. 400
Tucson, AZ 85711-3638
(520) 623-4353
ccline@udalllaw.com
*Attorney for Defendants*

_____
Doug Newborn

# Exhibit A

## VERIFICATION

**Russell Blattberg**, declares as follows:

1.      I am the **Plaintiff/Petitioner** in this case.

2.      I have read the foregoing *Petition and Complaint*; and, under penalty of perjury, state that I know the contents thereof to be true and correct to the best of my knowledge, except to those matters stated upon information and belief, and as to those matters I believe them to be true.

Dated: 11/13/25

Russell Blattberg (Nov 13, 2025 11:56:16 PST)

**Russell Blattberg**

Page 1 of 1
Verification

# Exhibit B

## RUSSELL N. BLATTBERG 2000 IRREVOCABLE TRUST

THIS DECLARATION AND AGREEMENT OF TRUST made this 28th day of June, 2000, by and between JULIE G. BRESKIN and PAUL R. BLATTBERG, both of Marblehead, Massachusetts (hereinafter called the "Donors"), and RICHARD A. REISIN, of Chicago, Illinois (hereinafter called the "Trustee").

### WITNESSETH THAT:

WHEREAS the Donors, intending to create an irrevocable trust, hereby transfer the sum of One Dollar ($1.00), to the Trustee, and may from time to time assign, transfer or pay over to the Trustee other property; and

WHEREAS the Trustee hereby acknowledges that he has received said sum in trust and declares that he will hold, manage and invest the same, together with all property transferred to the trust by gift, by will, or otherwise from the Donors or anyone else (hereinafter in this paragraph referred to as the "Transferor") and accepted by him as Trustee, in one or more trusts hereunder, as directed by said Transferor. If no direction is received from the Transferor, said property, if accepted by the Trustee, shall be held in a separate trust hereunder subject to the terms of Article 4, or in such other trust hereunder as determined in the sole discretion of the Trustee.

NOW, THEREFORE, the parties hereto agree as follows:

### ARTICLE 1

This trust shall be known as the RUSSELL N. BLATTBERG 2000 IRREVOCABLE TRUST, and it shall be irrevocable and unamenable. This trust is a means by which assets may be held for the benefit of RUSSELL N. BLATTBERG (hereinafter "Russell") and his issue, whenever born, on the terms and conditions set forth in this instrument.

### ARTICLE 2 - TRUSTEE PROVISIONS

2.1    Any Trustee may resign by an instrument in writing signed and delivered to the other Trustee or Trustees then acting under this instrument, or to the next successor Trustee or Trustees designated in this instrument, if there are no Trustees then acting, and to the Donors if the Donors are then living. If no successor Trustee or Trustees are designated and if the Donors are not then living, a Trustee's resignation may be delivered to a majority of

the persons empowered at such time to appoint a successor Trustee or Trustees. Failure to give any notice of resignation shall not invalidate the resignation, but it shall not be effective as against any person dealing in good faith with an apparent Trustee of said trust without knowledge thereof.

2.2    In no event shall either of the Donors serve as a Trustee hereunder.

2.3    Any vacancy in the office of Trustee of any trust shall be filled by a successor appointed by a writing signed by all of the Donors who are then of legal capacity, and all of the Donors may appoint additional or successor Trustees at any time, subject to the requirement that there shall at all times be serving at least one Trustee who shall not be an interested person (hereinafter referred to from time to time as the "disinterested Trustee").

2.4    Upon the death of the Donors there shall at all times be two (2) or more Trustees serving of each trust hereunder, the number of Trustees of any trust to be determined by an instrument in writing by the Trustee or Trustees of said trust then in office, subject to the requirement that at least one (1) Trustee shall not be an interested person.

2.5    Upon the death of the Donors, DAVID ATKINS BRESKIN, of San Francisco, California shall serve as a Trustee hereunder.

2.6    Any individual serving as a Trustee of any trust shall cease to serve as such Trustee whenever such individual is not of legal capacity.

2.7    Upon the death of the Donors, any vacancy in the office of Trustee not filled pursuant to other provisions of this Agreement shall be filled by a new Trustee or Trustees appointed forthwith by the remaining Trustee or Trustees by an instrument in writing, with the written consent of a majority of the persons eligible to receive net income from said trust at the time of said appointment who at that time are of legal capacity. If there are no Trustees then remaining, such vacancy in the office of Trustee shall be filled by a new Trustee or Trustees appointed by an instrument in writing by Russell if he is of full age and legal capacity, and upon Russell's death, by a majority in number of all beneficiaries then entitled to receive, receiving or eligible to receive income or principal from any trust estate hereunder. The natural or legal guardian or conservator may act for any beneficiary who is not of full age or legal capacity. The exercise of the provisions herein by any beneficiary shall be subject to the following terms and requirements:

2.7.1    At least one Trustee appointed hereunder shall qualify as a "Professional Trustee," as defined in Paragraph 21.3 hereunder.

2.7.2  At any time a Professional Trustee is serving, the Donors suggest, but do not require, that a family member or family friend serve as a Co-Trustee hereunder with said Professional Trustee.

2.8  Upon written acceptance of the trust by a successor Trustee, title to the trust property shall vest in the new and old Trustees (or in the new Trustee or Trustees alone, if there be no old Trustees then acting) without any conveyance or further formality.

## ARTICLE 3 - TRUSTEE REMOVAL POWERS

3.1  All of the Donors who are then of legal capacity may at any time remove any Trustee of any trust estate hereunder by delivering written notice thereof to such Trustee.

3.2  Upon the death of the Donors, the following provisions shall apply:

3.2.1  Any Trustee of any trust may be removed for "just cause" by a writing signed by Russell if he is of full age and legal capacity, and upon Russell's death, by a majority in number of all beneficiaries then entitled to receive, receiving or eligible to receive income or principal from any trust estate hereunder. The natural or legal guardian or conservator may act for any beneficiary who is not of full age or legal capacity. "Just cause" shall include the willful mismanagement of the trust assets by the Trustee; inattention to the trust by the Trustee; a federal or state charge against the Trustee involving the commission of a felony or a serious misdemeanor; an act of stealing, dishonesty, fraud, embezzlement, moral turpitude, or moral degeneration by the Trustee; the use of narcotics or excessive use of alcohol by the Trustee; the physical, mental or emotional incapacity of the Trustee such that the Trustee is unable to devote sufficient time to the administration of the Trust; the failure by the Trustee to comply with a written fee agreement; the relocation by a Trustee away from the location where the trust operates so as to interfere with the administration of the trust; a demand from the Trustee for unreasonable compensation for such Trustee's services; and any other reason for which a court of competent jurisdiction would remove a Trustee.

3.2.2  Any Trustee of any trust may be removed for any reason, by a writing by Russell if he is of full age and legal capacity, and upon Russell's death, by a majority in number of all beneficiaries then entitled to receive, receiving or eligible to receive income or principal from any trust estate hereunder. The natural or legal guardian or conservator may act for any beneficiary who is not of full age or legal capacity.

RUSSELL N. BLATTBERG 2000 IRREVOCABLE TRUST

3.3    Notwithstanding the foregoing, if a vacancy in the office of Trustee is created through the exercise of a removal power granted herein, no successor Trustee appointed to fill such vacancy shall be related or subordinate (within the meaning of § 672(c) of the Code) to the Donors or any beneficiary hereunder.

3.4    Written notice of removal under this Article shall be promptly given to the Trustee being removed, if any, to the remaining Trustee of said trust, if any, and to each person who would then be entitled to receive notice of an account of the Trustee of said trust. Failure to give any notice of removal shall not invalidate the removal, but it shall not be effective as against any person dealing in good faith with an apparent Trustee of said trust without knowledge thereof.

3.5    The appointment of any successor Trustee due to the exercise of the removal powers granted hereunder shall be subject to the provisions of Article 2.

## ARTICLE 4 - TRUST DISTRIBUTIONS

4.1    Subject to the provisions of the following Article 5, all property held by the Trustee as provided in this Article shall be held by the Trustee as two separate trusts, one trust consisting of all property that has an inclusion ratio of zero (0) for purposes of the GST, and one trust consisting of all property that has an inclusion ratio of other than zero (0) for purposes of the GST.

4.2    Each such trust shall be held and distributed by the Trustee as follows:

    4.2.1    Until the time hereinafter specified, the Trustee may distribute to and among any one or more of Russell and Russell's issue, whenever born, so much of the income and so much of the principal of the trust, at such time or times and in such amounts and proportions as the Trustee, in the Trustee's uncontrolled discretion, may determine desirable, including but not limited to distributions (i) for the health, support in reasonable comfort, education, best interests, and welfare of Russell and his issue, (ii) to permit Russell to enter into or engage in a business or profession in which the Trustee, in the Trustee's discretion, believes there is a reasonable prospect for success, and (iii) to permit Russell to make a reasonable down payment on a personal residence, in each case considering all circumstances and factors deemed pertinent by the Trustee.

    4.2.2    Without limiting the foregoing discretion of the Trustee with respect to payments of principal, the Trustee shall distribute to Russell, free of trust, upon Russell's

RUSSELL N. BLATTBERG 2000 IRREVOCABLE TRUST                                    Page 4 of 21

written request, at the times hereinafter specified the following proportions of the then remaining principal of the trust, as constituted at the times of the requests:

    (i)    fifty percent (50%) of the remaining principal of the trust upon Russell's request at any time when Russell attains the age of 35 or more years;

    (ii)    such part or all of the principal of the trust as Russell may request from time to time after said child attains the age of 40 years.

4.2.3    Unless sooner terminated by payments of principal as hereinabove provided, the trust shall terminate upon the death of Russell, whereupon the Trustee shall pay and distribute the then remaining principal and undistributed income of such trust estate to and among any of Russell's issue, in such amounts and proportions as Russell shall direct and appoint by the last Will of Russell duly allowed for probate by the court having jurisdiction over the administration of the estate of Russell. Such power of appointment must be exercised by specific reference to this instrument and to such trust. A general provision or a residuary clause in the Will of Russell shall not be considered an exercise of said power of appointment. Such appointment may, however, be for such estates and interests and upon such terms, trusts, conditions and limitations as Russell may designate in such Will. If Russell fails to exercise said power of appointment effectively, in whole or in part, then upon the death of Russell, the Trustee shall pay and distribute the then remaining principal and undistributed income of such trust, or such portion thereof as shall not have been effectively appointed, to the issue then living of Russell, by right of representation, and if there are no issue then living of Russell, to the Donors' issue then living, by right of representation; subject to the provisions of Article 8 and Paragraph 17.5.

## ARTICLE 5 - NOTICE REQUIREMENTS; WITHDRAWAL RIGHTS

Notwithstanding the provisions of Article 4 regarding payments of income and principal, whenever a transfer is made directly or indirectly to the trust by gift from the Donors, the Donors may direct that certain withdrawal rights shall apply:

5.1    The Donors may direct that one or more beneficiaries who are eligible to receive income or principal at the time of the gift may withdraw part or all of the property transferred to the trust (or the equivalent value in money or money's worth). The Donors need not specify that all beneficiaries of the trust be permitted to exercise withdrawal rights.

5.2    The Donors may specify the amount or portion of the property transferred to the trust that each designated beneficiary may withdraw. These amounts need not be equal.

5.3    The Donors may designate the duration of each designated beneficiary's withdrawal right. The periods of withdrawal need not be of equal length.

5.4    The Donors' direction shall be given to the Trustee in writing at the time of each gift. The Trustee shall promptly notify each designated beneficiary in writing of the withdrawal rights and of applicable terms and conditions. If any of the designated beneficiaries is not of legal capacity, the Trustee shall notify the designated beneficiary's guardian, if any, otherwise a parent of the designated beneficiary.

5.5    The Trustee may satisfy a beneficiary's demand for a distribution by distributing cash, other assets, or fractional interests in other assets, as the Trustee deems appropriate.

## ARTICLE 6 - GENERATION-SKIPPING TRUST ADMINISTRATION

6.1    To reduce the incidence of the generation-skipping transfer tax, the Trustee shall give due consideration to the following:

6.1.1    Except as provided in Subparagraph 6.1.3, when making distributions to or for the benefit of skip persons, to make such distributions from a trust having an inclusion ratio of zero (0);

6.1.2    When making distributions to beneficiaries other than skip persons, to make such distributions from a trust not having an inclusion ratio of zero (0); and

6.1.3    When making distributions with respect to a skip person's medical or education expenses which qualify for the exclusion permitted by Section 2611(b)(2), to make such distributions from a trust not having an inclusion ratio of zero (0), provided that any such distributions shall be made directly to an educational organization or medical care provider described in Section 2503(e) to qualify for the exclusion permitted by Section 2611(b)(2).

6.2    When considering making distributions to a non-skip person, the Trustee should be mindful that the use of such person's unified credit and annual gift tax exclusion may permit the avoidance of transfer taxes. The Trustee should also consider the difference in rates, if any, between the generation-skipping transfer tax and the estate and gift taxes and whether a significant tax savings might be achieved by incurring an estate or gift tax as a result of a distribution rather than incurring a generation-skipping transfer tax. Notwithstanding the

foregoing provisions of this Article, nothing contained herein shall be deemed to impose an obligation on the Trustee to make distributions in any particular manner.

6.3    If at any time terminating distributions are to be made simultaneously from the principal of more than one trust hereunder, at least one of which has an inclusion ratio of zero (0) and at least one of which does not, then unless all the recipients of such distributions are non-skip persons or trusts exclusively for the benefit of non-skip persons, the Trustee shall make such distributions as follows:

    6.3.1    While making such distributions, the Trustee shall keep property which has an inclusion ratio of zero (0) separate from property which has an inclusion ratio of other than zero (0).

    6.3.2    In making such distributions, the Trustee shall to the extent possible equitably allocate property which has an inclusion ratio of zero (0) to skip persons and to trusts exclusively for the benefit of skip persons. If, after making such distribution, there remains any property which has an inclusion ratio of zero (0), such property to the extent possible shall be equitably allocated among non-skip persons and trusts, if any, which are not exclusively for the benefit of skip persons.

    6.3.3    The Trustee's determinations hereunder shall be binding on all persons.

6.4    It is the intent that all trusts created hereunder shall have an inclusion ratio for purposes of the GST of either zero (0) or one (1). All questions concerning the administration of the trusts hereunder and the construction of this instrument shall be resolved, and all powers, authorities and discretions of the Trustee of any trust hereunder shall be exercised in a manner consistent with and to effectuate the aforesaid intent.

6.5    The disinterested Trustee is authorized to grant a general power of appointment (as defined in §2041(b) of the Code) to any non-skip person (such donee hereinafter called the "Power Holder"). The terms and conditions of any exercise of such Power of Appointment shall be determined by the disinterested Trustee in such Trustee's sole and absolute discretion and shall be set out in the instrument granting such Power of Appointment. Such terms and conditions may require that such exercise be conditioned upon the approval of the disinterested Trustee prior to exercise or at any other time prior to the death of the Power Holder. Such terms and conditions may provide that such power be exercised by the Power Holder's Last Will and that such Will specifically refer to such power or by a written instrument acknowledged and executed under seal by the Power Holder and that such written instrument specifically refer to such power and be delivered to the disinterested Trustee prior to the Power Holder's death. Such terms and conditions may provide that the

disinterested Trustee may revoke the grant at any time prior to the Power Holder's death. Such terms and conditions shall limit the assets to which such Power of Appointment applies to assets of GST taxable trusts and shall limit the application of such Power of Appointment to the disposition of such assets after the Power Holder's death. Such terms and conditions shall further limit such Power of Appointment so that the power to grant, or revoke a grant of, such Power of Appointment shall in no event be considered a general power of appointment held by the disinterested Trustee. Such terms and conditions may include such further limitations upon the exercise of such Power of Appointment as the disinterested Trustee deems appropriate in such Trustee's sole and absolute discretion.

## ARTICLE 7 - DISASTER PROVISIONS

If at any time there are no beneficiaries to or for whom distributions under the preceding provisions of the trusts hereunder may be made, the Trustee shall distribute the then remaining principal and undistributed income as follows:

7.1     One-half (½) to The Shifting Foundation, Chicago, Illinois.

7.2     One-half (½) equally to Russell's first cousins then living. For purposes of this Article, the children of Judith Ruhman Taggart and James Michael Ruhman shall be included in the definition of first cousin.

## ARTICLE 8 - MINORITY PICK-UP TRUST

8.1     Whenever any property becomes distributable by the Trustee, except as a result of the exercise of a power of appointment or the exercise of the Trustee's power to make discretionary payments of income and principal to any person, other than Russell, who is then under the age of 35 years, the property shall vest in equity in such person. The Trustee may, however, in the Trustee's uncontrolled discretion, retain the legal title to the property until such person reaches the age of 35 years or until the time for distribution of all trusts created hereunder, whichever is earlier.

8.2     The Trustee acting under this Article shall have powers, rights, privileges, immunities, exemptions and discretions identical to those given to the Trustee as Trustee of all other trusts created under this instrument, including, without limitation, the power to apply any portion or portions of the property, without distinction as to principal or income, for the benefit of such person, the power to pay the whole or any portion of said principal and income, or either, directly to such person at any time or from time to time, whether or not of legal majority, and to such person's guardian (natural or legal) or to make payments to

RUSSELL N. BLATTBERG 2000 IRREVOCABLE TRUST                                    Page 8 of 21

both. Upon the death of such person before receiving distribution of the entire principal and income of the property, the remaining principal and income shall pass as part of such person's estate.

## ARTICLE 9 - GENERAL DISTRIBUTION PROVISIONS

The following additional provisions shall apply to all trusts hereunder:

9.1     In making discretionary payments or distributions of principal or income, the Trustee may make a distribution of principal or income to one of the beneficiaries of any trust hereunder without making any distribution to another beneficiary, and the Trustee may, for example, in the Trustee's uncontrolled discretion, distribute the entire principal of a particular trust to one such beneficiary.

9.2     Whenever the Trustee has discretion to pay principal or income, the Trustee may, in determining whether any payment of principal or income is to be made, take into consideration other funds available to the particular beneficiary and also the ability of the particular beneficiary to handle wisely the funds to be so distributed. The Trustee shall not be limited to any particular standard in making discretionary payments of principal or income, and the Trustee may make such distributions in such amounts and proportions as the Trustee, in the Trustee's uncontrolled discretion, may deem desirable under all of the circumstances.

## ARTICLE 10 - RULE AGAINST PERPETUITIES

Notwithstanding any other provisions of this instrument, each trust estate established hereunder shall terminate, if it has not previously terminated, twenty-one (21) years after the death of the last survivor of the Donors and the Donors' issue living on the date of the execution of this instrument. Upon such termination, the then remaining principal and undistributed income of each trust estate shall be distributed, free of trust, to the issue then living of the child with respect to whom such trust estate was established or with respect to whose issue such trust estate was established, and such distribution shall be made by right of representation.

## ARTICLE 11 - POWER TO APPLY PAYMENTS

11.1    The Trustee, in the Trustee's uncontrolled discretion, may make payments of income or principal to any beneficiary by paying them directly to the beneficiary, whether or not the beneficiary is of age and legal capacity, by depositing them in any account in the name of

the beneficiary, by paying them to a parent, legal guardian or conservator of any beneficiary who is not of age or of legal capacity, or to a custodian of a minor beneficiary under the applicable state Uniform Gifts to Minors Act or the applicable state Uniform Transfers to Minors Act, or by applying them for the use or benefit of a beneficiary, and the Trustee shall have the power to determine what expenditures are for the use or benefit of a particular beneficiary. Any distribution or payment made by the Trustee in good faith under the provisions of this Paragraph shall be as full and complete a discharge to the Trustee with respect to such payment or distribution as would be a personal receipt therefor, signed by a beneficiary of full age and legal capacity.

11.2    Without limiting the generality of the foregoing, a distribution may be made by the Trustee by the execution of a certificate crediting or allocating funds or specific property to a beneficiary, and upon the execution of such a certificate and the delivery thereof to the beneficiary (as evidenced by the written receipt of the beneficiary, whether or not he is of age and legal capacity, or of the natural or legal guardian or conservator of the beneficiary, or of the custodian of a minor under the applicable state Uniform Gifts to Minors Act or the applicable state Uniform Transfers to Minors Act), the beneficiary shall have the unqualified right to the payment or transfer of such funds or property, on demand, at any time or from time to time, as of the date of such certificate.

## ARTICLE 12 - POWER TO TERMINATE TRUSTS

Notwithstanding any other provisions of this instrument, if any trust hereunder shall, in the opinion of the Trustee, become uneconomic or otherwise inadvisable to administer, such Trustee, if the Trustee deems it in the best interests of the beneficiaries, is authorized to terminate any trust hereunder, and distribute the principal to or for the benefit of the beneficiaries who are then entitled to receive the income and principal of such trust, and the Trustee shall have no liability to any other beneficiary of any trust hereunder.

## ARTICLE 13 - SPENDTHRIFT PROVISIONS

The interest of each beneficiary in income and principal shall be free from the control or interference of any creditor of a beneficiary or of any spouse of a beneficiary, and shall not be subject to attachment or susceptible of anticipation or alienation.

## ARTICLE 14 - MERGER OF TRUST IN CERTAIN CIRCUMSTANCES:

If at any time after the death of the Donors there shall be in existence one or more trusts established by a Donor, the terms and provisions of which are substantially the same as those contained in this instrument, the Trustee is hereby authorized to merge and combine this Trust with such other trusts if the Trustee, in the Trustee's sole and uncontrolled discretion, believes that the overall administration of all trusts will thereby be facilitated and the total costs associated therewith reduced (bearing in mind, however, the inclusion ratio of each such trust and other federal and state tax attributes of each such trust). The Trustee hereunder shall not be liable for any action he takes or refrain from taking pursuant to this Article 14 if made in good faith and upon information reasonably available to them.

## ARTICLE 15 - LIMITATIONS ON POWERS OF INTERESTED PERSONS

Notwithstanding any provisions herein to the contrary, an interested person shall not have any power, authority, or discretion as a Trustee of any trust hereunder to make or participate in any discretionary decision concerning: (1) the payment or accumulation of income of said trust; (2) the payment of principal of said trust; (3) the determination of what constitutes income and principal of said trust and the charges to be made against each; (4) the exercise of any incident of ownership with respect to any policy of insurance on his own life; (5) the granting of any power of appointment to a beneficiary of any trust hereunder; and (6) the exercise of any power of amendment granted under any trust hereunder; and no Trustee shall delegate to an interested person any such power, authority, or discretion. This provision is intended to preclude the possibility of the imposition of estate, inheritance, or other taxes which in its absence might be sought from said persons or from their estates.

## ARTICLE 16 - INSURANCE POLICIES

16.1  The Trustee shall not be obligated to pay any premiums on any life and/or accidental death insurance policies deposited with or made payable to them, nor to see that the policies are kept in force. The Trustee shall use reasonable efforts to collect the proceeds of any policies when such proceeds, to their knowledge, have become payable to them, but the Trustee shall not be required to take any legal proceedings until indemnified to their satisfaction. The Trustee shall have no other responsibilities as to such policies.

16.2  Any insurance company may conclusively presume with respect to any policies deposited with the Trustee, or of which the Trustee is the payee or beneficiary, that the Trustee has full power to receive and receipt for any money becoming due and payable under any such policies. No insurance company, in making payments under any such policy, shall be

obliged to deal with or take cognizance of any beneficiaries under this instrument, nor shall it be responsible for the proper application or disposition of any funds paid to the Trustee.

## ARTICLE 17 - TRUSTEE'S ADMINISTRATIVE POWERS

In extension and not in limitation of the powers given the Trustee by law or under any other provisions of this instrument, the Trustee shall have the following powers, in each case to be exercised or exercisable from time to time, in the Trustee's uncontrolled discretion, without notice to any beneficiary and without order, leave or license of court:

17.1   To retain indefinitely any investment made by the Trustee and any property, real or personal, transferred to the Trustee by the Donors, and to invest and reinvest in stocks, shares and obligations of corporations, of unincorporated associations (including, but not limited to, capital investments in joint ventures and limited partnerships), trusts and investment companies, or in a common trust fund, or in any other kind of personal (tangible or intangible) or real property, such investments to be in such amounts, upon such terms, and of such character as the Trustee may deem advisable, notwithstanding the fact that any or all of such investments are of a character or size which, but for this express authority, would not be considered proper for a Trustee to make or retain;

17.2   To retain and acquire non-income producing property, and if such property is retained or acquired, then on the sale or other disposition of such property, to make apportionment of the proceeds between income and principal so as to make up for the loss of income during the period of the retention of such non-income producing property;

17.3   To open bank accounts, with the right in any one Trustee (if more than one Trustee is serving hereunder) to sign checks and make withdrawals therefrom;

17.4   To make loans to such borrowers and upon such terms (as to security, payment and otherwise) as the Trustee may deem desirable; provided, however, that nothing contained in this instrument shall permit the Trustee to make loans to the Donors without adequate interest and security therefor; and provided, further, that if a loan is made to the Donors at a time when any Trustee participating in the making of such loan is a related or subordinate party subservient to said Donors within the meaning of Code Section 672(c) (or any successor provision thereto of similar purport), such loan shall be repayable in full during the taxable year within which such loan is made;

17.5   To borrow money or other property on such terms as the Trustee may deem desirable and to mortgage, pledge or grant any interest in any real or personal property as security therefor;

17.6  To pay as income the whole of the interest, dividends, rents or similar receipts from property, whether wasting or not and although bought at a value above par, but if the Trustee sees fit when property is bought or taken at a value above par, the Trustee may retain a portion of the income to offset such loss to the principal; to treat as income or principal or to apportion between them stock dividends, extra dividends, rights to take stock or securities, capital gains and proceeds from the sale of unproductive property; to charge to income or principal or to apportion between them custodians' compensation, brokers' commissions, agents' compensation, attorneys' fees, insurance premiums, repairs or improvements, taxes (income, estate, inheritance or any other taxes), depreciation charges and Trustee's compensation; and generally to determine all questions as between income and principal and to credit or charge to income or principal or to apportion between them any receipt or gain and any charge, disbursement or loss as is deemed advisable in the circumstances of each case as it arises; provided, however, that the Trustee shall in all events apply reasonable accounting principles in making any such determination, allocation or apportionment;

17.7  To exercise in whole or in part any or all options or other rights to purchase securities or obligations of any corporation;

17.8  To buy, exchange, sell, lease, give options and make contracts (concerning real or personal property) for such consideration and upon such terms as to credit or otherwise as the Trustee may deem desirable, which leases, options and contracts may extend beyond the term of any trust hereunder; provided, however, that nothing contained in this instrument shall permit the Trustee to sell, exchange or otherwise deal with any trust property in a transaction with the Donors, unless such sale, exchange or other transaction is for adequate consideration in money or money's worth;

17.9  To hold real estate, bonds, shares or other securities or property in bearer form or in the name of a nominee;

17.10  To compromise, submit to arbitration or pay any claim or matter of difference, including, without limitation, matters involving taxes;

17.11  To invest, use and apply any funds held by the Trustee in any trust hereunder to provide, or to assist in providing, a home or living quarters for one or more of the beneficiaries of such trust;

17.12  To hold, purchase, dispose of or otherwise deal with life insurance, annuities, endowment policies or other forms of insurance on the life or lives of any beneficiary or beneficiaries, or on the life or lives of others, for the benefit of any beneficiary of any trust hereunder, and to pay the premiums and costs therefor from the principal or income of such trust;

17.13   To sell or divide real or personal property for distribution, to distribute wholly or partially in kind, and to make distributions in kind by allotting, transferring or conveying specific real or personal property or undivided interests therein at such values as the Trustee deems just and proper (which values shall be conclusive) without regard to the tax basis of individual assets which are allocated or distributed in kind pursuant to the provisions of this Paragraph, and without any adjustments whatsoever for differences in the tax basis of various assets which are allocated or distributed in kind to and among two or more trust or beneficiaries pursuant to the provisions of this Paragraph;

17.14   To hold, manage and invest all or any part of the principal and/or income of any two or more trusts established under this instrument as a single fund, with the interest of each such trust consisting of an undivided interest therein, any determination which the Trustee may make with respect to the value of the joint investment or of the interest of any such trust to be conclusive and binding on all persons in the absence of fraud or manifest error;

17.15   To allow, at the Trustee's option, the whole or any part of the amount which may become due to the Trustee from any insurance company to remain on deposit with such company, on such terms as the Trustee may determine; to exercise any and all of the rights which the Trustee may have under the terms and provisions of any policy; and to accept the commuted value of any monthly income payments or other comparable payments due to the Trustee as beneficiary, under the terms and provisions of any policy deposited with or made payable to the Trustee;

17.16   To hold any property distributable to a trust hereunder as a separate trust with identical dispositive terms if said property or any part thereof has an inclusion ratio for generation-skipping transfer tax purposes that is different from the inclusion ratio of said trust;

17.17   To amend any of the administrative provisions of this instrument for any reason;

17.18   To receive, and retain as additions to any trust hereunder, any real or personal property (including, without limitation, additional policies) received from any person by gift or Will or otherwise, and to hold and administer the same under the provisions of this instrument with respect to such trust;

17.19   To collect rents and other profits from real estate; and to pay all carrying charges thereon and make repairs thereto;

17.20   To improve or develop real estate; to construct, alter or repair buildings or structures on real estate; to settle boundary lines and easements and other rights with respect to real estate; to partition real estate; and to join with co-owners, if any, in dealing with real estate in any way;

17.21   To vote directly or to give general or special proxies or powers of attorney for voting or acting with respect to shares or securities, which may be discretionary and with power of substitution; to deposit shares or securities with, or transfer them to, protective committees or similar bodies; to join in, vote upon and act in any manner that the Trustee deems appropriate with respect to any reorganization, merger or consolidation; and to pay assessments or subscriptions called for in connection with shares or securities held by the Trustee;

17.22   To employ investment counsel, custodians, brokers, accountants, agents and attorneys, including, without limitation, any investment advisory, brokerage, law or accounting firm or corporation of which the Trustee may be a principal, proprietor, stockholder, member, associate, affiliate or employee, to advise or assist the Trustee in the performance of administrative duties, to act without independent investigation on their recommendations and, instead of acting personally, to employ one or more agents to perform any act of administration, whether or not discretionary, and, as an expense of the trust, to pay reasonable fees and compensation, for services rendered to the trust, to such individuals, firms, or corporations, including affiliates of the Trustee, unless already included in the compensation of the Trustee as set out in its prevailing schedule of fees;

17.23   To keep any or all of the trust property in any place or places within the United States or elsewhere or with a depository and/or custodian at any such place or places; and

17.24   To execute deeds, assignments, leases, notes, contracts or other instruments in writing, whether or not under seal, incident to any of the Trustee's powers.

## ARTICLE 18 - ACCOUNTING PROVISIONS

18.1   During the life of the Donors, the Trustee shall render an account of the Trustee's administration of the trust to the Donors at such times as either Donor shall request in writing; provided, however, that the Trustee may at any time or times render an account to the Donors, if the Donors are of legal capacity, or to the guardian of a Donor, if a Donor is not of legal capacity, even though the Donor or the Donor's guardian does not request the same. The Donor shall be deemed to have approved an account if the Donor or the Donor's guardian assents to the account in writing or does not give written notice to the Trustee of an objection to the account within ninety days after the date on which the account is rendered.

18.2   Upon the death of the Donors, the Trustee shall each year prepare an account of their administration of each trust hereunder and give written notice to each person entitled thereto as hereinafter provided that the account has been prepared and that a copy thereof

RUSSELL N. BLATTBERG 2000 IRREVOCABLE TRUST                                   Page 15 of 21

will be furnished upon request in writing. Said notice shall be given by mail or delivery (i) to each person eligible to receive net income from the trust at the time at which notice is given if at that time such person is of legal capacity and (ii) to the legal guardian of each person eligible to receive net income from the trust who at that time is under guardianship. A person to whom notice of an account is given shall be deemed to have approved the account if he assents to the account in writing or if he does not give written notice to the Trustee of his objection to the account within ninety days after the date on which notice is given, even though he does not request a copy of the account as herein provided.

18.3    The approval of any account of any trust as hereinabove provided by a majority of the persons entitled to receive notice of the account as hereinabove provided shall constitute a full and complete discharge to the Trustee from further accountability or liability as to all matters and transactions stated therein or shown thereby and as to all persons, whether in being or under disability or not, who have been, are then, or may thereafter become eligible to share in either the principal or the net income of the trust.

## ARTICLE 19 - PRIVILEGES AND IMMUNITIES

In extension and not in limitation of the privileges, immunities, exemptions and discretions given to the Trustee by law and by other provisions of this instrument, the Trustee shall have and may exercise the following privileges, immunities, exemptions and discretions without notice to any beneficiary and without order, leave or license of court, and the following provisions shall apply thereto:

19.1    No bond, surety or security shall be required of any Trustee.

19.2    If there is ever more than one Trustee, no Trustee shall be liable for any act or omission of any other Trustee. No Trustee shall be liable for any error in judgment. A Trustee shall be liable only for such Trustee's own willful acts or omissions in bad faith. Without limiting the generality of the foregoing, any Trustee is authorized to obtain and rely upon the opinion or advice of counsel selected with reasonable care concerning any questions arising under this instrument or in any way relating to any trust hereunder or relating to such Trustee's powers and duties in connection with any trust hereunder; and no Trustee shall be liable for any act or omission which is in accordance with the opinion or advice of such counsel.

19.3    Any Trustee may resign by an instrument in writing signed and delivered to the other Trustee or Trustees then acting under this instrument, or to the next successor Trustee or Trustees designated in this instrument, if there are no Trustees then acting. If no successor

Trustee or Trustees are designated, a Trustee's resignation may be delivered to a majority of the persons empowered at such time to appoint a successor Trustee or Trustees.

19.4    No one dealing with the Trustee hereunder need inquire into the validity of anything the Trustee may purport to do or need see to the application of any money paid or property transferred to or upon the order of the Trustee.

19.5    If there are more than two Trustees, a majority of them may act; if there are two Trustees, they shall act jointly; provided, however, that if a Trustee has delegated any of his powers pursuant to Paragraph 19.6, such Trustee shall be deemed to have acted when the Trustee to whom he has delegated the power to act takes action; and provided, further, that if any Trustee is prohibited from acting under any other provision of this instrument, the remaining Trustees or Trustee shall have the power to act alone.

19.6    If there are two or more Trustees, any Trustee may, by a written instrument, delegate any or all of his powers to one or more of the other Trustees, and he may revoke any such delegation by a written instrument.

19.7    No purchaser or other person dealing with a Trustee or Trustees purporting to act under a delegation of powers pursuant to the immediately preceding Paragraph need inquire into the propriety of such delegation or into the question of whether the same is still in effect, unless the terms of such delegation indicate that it has expired.

19.8    A certificate signed and acknowledged by the Trustee or Trustees for the time being (if there are two or fewer Trustees) or by a majority of the Trustees (if there are more than two Trustees), certifying who are the Trustees (or who is the Trustee) for the time being or to a change in the Trusteeship or to any other fact affecting the trust or this instrument, shall be conclusive evidence thereof, but where land is concerned such certificate shall be conclusive evidence only when duly recorded or registered, as the case may be, in the county (or other recording or registry district) where is situated the land affected thereby.

19.9    Whenever the Trustee is given discretion, such discretion shall be exercised and exercisable solely by the Trustee and shall not be subject to control, whether or not the particular provision providing for such discretion so states.

19.10    Every written contract made by the Trustee shall refer to this instrument; and any person contracting with the Trustee shall look only to the trust, and not to the Trustee individually or to any beneficiary, for payment or performance of any debt or other obligation of any trust hereunder.

RUSSELL N. BLATTBERG 2000 IRREVOCABLE TRUST                                    Page 17 of 21

## ARTICLE 20 - ADDITIONAL PROVISIONS

20.1   This instrument is to be governed by and construed and administered according to the laws of the Commonwealth of Massachusetts and shall continue to be so governed, construed and administered even though conducted or administered elsewhere within the United States or abroad.

20.2   Any provision hereof which may prove unenforceable under any law shall not affect the validity of any other provision hereof.

## ARTICLE 21 - DEFINITIONS AND RULES OF CONSTRUCTION

21.1   The term "this instrument" means the Russell N. Blattberg 2000 Irrevocable Trust.

21.2   The term "Trustee" means, wherever the context so permits, the Trustee or Trustees for the time being of the appropriate trust, whether original or successor.

21.3   The term "Professional Trustee" means a trustee which is a corporation authorized to act as a trustee under state law and which has assets under management of at least $250,000,000, or an accountant, private trustee, lawyer or individual, a substantial part of whose practice has been devoted to the areas of estate planning and trust administration for a period of at least ten (10) years.

21.4   The term "interested person" means, with respect to any trust hereunder, the Donors, the spouse of a Donor, and any person who is at the time eligible, or whose spouse is then eligible, to receive income and/or principal from such trust, or is legally obligated to support a person so eligible.

21.5   The term "Code" means the federal Internal Revenue Code of 1986, as amended from time to time, and shall include the corresponding provision of any subsequent federal tax law, and any references to "Section" shall be understood to refer to sections of the Code except where the context requires otherwise and shall also include the corresponding provisions of any subsequent federal tax law.

21.6   The term "GST" means the tax on certain generation-skipping transfers imposed by Chapter 13 of the Code.

21.7   The term "GST exemption" means the exemption allowed by Section 2631.

21.8   The term "inclusion ratio" shall have the meaning provided in Section 2642.

21.9    The term "skip person" shall be defined as provided in Section 2613(a)(1).

21.10    The term "non-skip person" shall be defined as provided in Section 2613 (b).

21.11    The term "contribution" means any cash or other assets transferred to the Trustee to be held as part of the trust. The amount of any contribution is its federal gift tax value, as determined by the Trustee at the time of the transfer.

21.12    The term "child" means a lawful descendant by blood or adoption in the first degree only.

21.13    The term "issue" means lawful descendants by blood, or descendants by adoption, in any one or more generations, in any degree.

21.14    The term "guardian" means the legally appointed guardian or conservator of the property of a beneficiary or the parent of a minor beneficiary.

21.15    A person shall be considered "not of legal capacity" if: (1) such person is under conservatorship or permanent guardianship; or (2) such person is unable to manage his financial affairs due to mental or physical incapacity, and is incapacitated to such a degree that he is unable to make informed decisions regarding his financial affairs, as certified in a writing signed by his attending physician and one disinterested physician.

21.16    Any power granted to a beneficiary herein may be exercised by an attorney in fact on behalf of said beneficiary.

21.17    A distribution "by right of representation" shall mean a division at the designated time into as many equal shares as are required to provide one such share for each child of the specified person living at such time and one such share for each deceased child of the specified person who left issue living at such time, with the share of a deceased child further divided into equal shares in the same manner and a like division at each level of descent until all the property to be distributed has been allocated among the living issue of the specified person.

21.18    Where the context so permits, each of the masculine, feminine, and neuter genders shall be deemed to denote the other two genders, the singular to denote the plural, and the plural to denote the singular.

21.19    Any paragraph or article headings used throughout this instrument are for convenience and reference only, and the words contained therein shall in no way be held to explain, modify, amplify or aid in the interpretation, construction or meaning of the provisions of this instrument.

21.20   This instrument shall become effective upon the execution hereof by the Trustee designated herein.

IN WITNESS WHEREOF, the Trustee in token of acceptance of the trusts created by this instrument, have hereunto set their hands and seals on the day and year first above written.

Julie G. Breskin, Donor

Paul R. Blattberg, Donor

Richard A. Reisin, Trustee

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                                        June 28, 2000

Then personally appeared the above-named JULIE G. BRESKIN, and acknowledged the foregoing instrument to be her free act and deed, before me,

(Seal)

Notary Public: Ann L. Thibodeau
My commission expires: 2/26/04

RUSSELL N. BLATTBERG 2000 IRREVOCABLE TRUST                    Page 20 of 21

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                                          June 28, 2000

Then personally appeared the above-named PAUL R. BLATTBERG, and acknowledged the foregoing instrument to be his free act and deed, before me,

(Seal)

Notary Public: Ann L. Thibodeau
My commission expires: 2/26/04

RUSSELL N. BLATTBERG 2000 IRREVOCABLE TRUST                        Page 21 of 21

# Exhibit C

**COMMONWEALTH OF MASSACHUSETTS**
**THE TRIAL COURT**
**PROBATE AND FAMILY COURT DEPARTMENT**

**Suffolk Division**

No. SU14P1936PO

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
In Re: Russell N. Blattberg Irrevocable  \*
Trust, dated June 28, 2000     \*
             \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JUN 20 2016

### MOTION OF PETITIONER
### FOR INDEPENDENT MEDICAL EXAMINATION

Now comes Julie G. Breskin, Petitioner in the above matter, and states that since she and her deceased husband established and funded the Russell N. Blattberg Trust for their beloved son, Russell, Russell's erratic and self-destructive behavior has made it clear that some provisions of the Trust need to be amended, to provide for Russell's long term safety and welfare.

Attorney Michelle Mannix, the court-appointed guardian ad litem, has also reported concerns as to Russell's competency, but in its Memorandum and Order, dated November 12, 2015 (Ross, J.), the Court stated that "based on the record before the Court, it is not possible to definitively determine whether Russell is or is not under a disability at this time.

The question of Russell's mental capacity is central to the rationale for Petitioner's filing this action and to the question as to whether or not a guardian ad litem is required.

Wherefore, the Petitioner respectfully moves that this Court order that the Respondent, Russell N. Blattberg, be examined by Dr. William Land, a forensic psychiatrist in Newton, Mass., Dr. Elizabeth Nasser, a forensic psychologist in Shrewsbury, Massachusetts, or such other professional as this Court may deem proper.

The within motion is allowed / denied

Abbe L. Ross
Judge of Probate and Family Court

# Exhibit D

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
PROBATE AND FAMILY COURT DEPARTMENT

SUFFOLK DIVISION                          No. SU14P0968O

IN RE:  RUSSELL N. BLATTERG  )
        IRREVOCABLE TRUST,    )
        DATED JUNE 28, 2000   )

Probate and Family Court
4/28 ____20 16
The within motion is allowed / denied—
as to issue of ripeness.
Abbe L. Ross
Judge of Probate and Family Court
as to issue of standing

**MOTION TO DISMISS THE PETITION TO REFORM THE RUSSELL N. BLATTBERG TRUST**

Comes now Russell N. Blattberg ("Russell"), beneficiary of the Russell N. Blattberg Trust, and requests that this Honorable Court  dismiss the Petition  to Modify the Russell N. Blattberg Irrevocable Trust dated June 28, 2000 for the reason set forth:

1. Julie Breskin, the petitioner and grantor, does not have standing to file a Petition to Modify the Trust because this is an irrevocable trust and there is no language allowing any alteration of the trust and G.L. c. 203E, §410(b) requires that a proposed modification may be commenced by a trustee or beneficiary. An action for modification may only be commenced by a settlor "[i]f, upon petition, the court finds that **the settlor and all beneficiaries consent** to the modification or termination of a non-charitable irrevocable trust, the court may approve the modification or  termination even if  the modification or termination is inconsistent with a material purpose of the trust." G.L. c. 203E, § 411(a).

2. This is a gift trust, not a grantor trust and cannot be modified pursuant to its terms.

3. Russell Blattberg is only 26 years old, this action is not ripe in that under the terms of the trust, any distribution to him at this time is at the discretion of the trustee. There is not a mandatory distribution to Russell until he reaches the age of 35.  The Trustee has no way to predict what the circumstances will be in 9 years for Russell Blattberg.

4. Russell Blattberg is not currently under any guardianship or disability. In the event that Russell were to need a guardian or conservatorship, the appropriate remedy would be filing a petition for guardian or conservator. A modification of the trust is not an appropriate remedy and would deprive the beneficiaries of their entitlements.

5. The proposed changes affect unnamed and unascertained beneficiaries, and they require appointment of counsel.

FILED
MAR 01 2016

c+1
4-15-16
8:30