# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

Jane Doe,                        )
                                 )        Case:1:26-cv-11011-RGS
        Plaintiff,               )
                                 )
        v.                       )        **Leave to file under**
                                 )        **preliminary seal granted**
John Doe,                        )        **May 1, 2026 [Dkt. 36]**
                                 )
        Defendant.               )
_____)

### DEFENDANT'S OPPOSITION TO THE PLAINTIFF'S
### MOTION TO ALLOW THE PARTIES TO PROCEED UNDER PSEUDONYM

The Defendant, John Doe, who filed this case in his true name, opposes Plaintiff's

Motion to Allow the Parties to Proceed under a Pseudonym – that would force him to

proceed under a Pseudonym -- for the additional reasons set forth below.

### Factual and Procedural Background

This case started on January 14, 2026, when John Doe's counsel sent a pre-suit

demand letter to Jane Doe that was accompanied by a draft complaint captioned for filing

in this Court. *See* Ex.1 (Durso Aff.) at Ex. A.[1] That demand letter, and the attached draft

---

[1] This letter read, in relevant part, that:

> I represent [John Doe] in his claim against you for sexual molestation which occurred when he was a child. I am authorized to commence legal action at this time.

> If you have any interest in resolving this matter without litigation, please contact me immediately. If I have not heard from you or your attorney by February 16th, I am instructed to file suit on that date. A copy of the Draft Complaint is enclosed.

> You are directed not to have any contact with [John Doe] either directly with my client, or indirectly through his, or your, relatives, or other persons. Should you disregard this directive, I am authorized to take whatever legal steps may be necessary, including the immediate filing of the above-referenced Complaint.

*See* Ex. 1 at Ex. A.

Federal Court Complaint, alleged childhood sexual abuse of John Doe by his mother, Jane Doe, from 1992 to 1995 when John Doe was ages 4-7 that caused him resultant harms and losses. In accord with the Fed. R. Civ. P. 10(a) the Complaint (and the demand letter) used the actual names of the parties. The demand was sent in an effort to engage in dialog about resolution without litigation in accord with the law's general encouragement of settlement.[2]

The demand achieved one of its goals by prompting a response from Jane Doe's attorney who claimed a busy trial schedule and requested that counsel for the Plaintiff – then John Doe – hold off on the Federal Court filing until the end of February, 2026. *See* Ex. 1 at ¶¶1-8. As a matter of usual and proper professional courtesy, John Doe's counsel agreed to the requested filing delay. *See* 1 at ¶7.

During the delay he requested, Jane Doe's counsel unacceptably abused the extended professional courtesy and took steps to usurp the mantle of being the Plaintiff in this case by preparing and filing a pre-emptive Superior Court complaint[3] asserting numerous irrelevant and immaterial allegations against Plaintiff's son. *See* Ex. 1 at ¶10. Jane Doe's pre-emptive state Court action was filed in the Essex Superior Court on or

---

[2] It is, of course, the policy of the law to encourage settlement. *See, e.g., Appleton v. Nat. Union Fire Ins. Co. of Pittsburgh*, 145 F.4th 177, 184 (1st Cir. 2025); *U.S. v. Cannons Engineering Corp.*, 899 F.2d. 79, 84 (1st Cir. 1990).

[3] Conspicuously absent from any of Jane Doe's complaints filed in Massachusetts is any meaningful reference to the litigation pursued in Arizona to deprive John Doe of his benefits under an Irrevocable Trust. This effort followed Jane Doe's unsuccessful efforts in Massachusetts Probate Court to achieve similar ends: depriving John Doe of mandatory benefits to which he is entitled under an Irrevocable Trust. John Doe respectfully requests that the Court acquaint itself with the verified Petition and Complaint from the Arizona proceeding, *see* Dkt #29 (public records from Arizona proceeding subject here to preliminary seal) so that it will have a more informed understanding of the unfortunate maneuvers made to adversely impact John Doe's rights as a beneficiary of an Irrevocable Trust.

about February 25, 2026, and also sought an emergency order of impoundment. *See* Ex. 1 at ¶¶10-11. After learning of the pre-emptive Superior Court filing, and before learning of the allowance of the emergency motion to impound, John Doe's attorney filed John Doe's Federal Court complaint February 26, 2026.[4] *See* Durso Aff. at ¶¶ 14-16.

Plaintiff's pre-emptive state court case was removed to this Court on February 27, 2026, *see* Ex. 1 at ¶16, and then consolidated with this case. This Court then ordered Plaintiff to re-file her Complaint in this case where it became the operative Complaint. In its current form, Plaintiff's Complaint is 153 paragraphs spanning 29 pages and states Counts for defamation and intentional infliction of emotional distress.[5] Many paragraphs purport to contain quotes from John Doe's medical and mental health records.

---

[4] The *Walsh* Court (Gertner, J.) noted that "It is important to note, however, that nothing in the Fed. R. Civ. P. Rule 13 prevents the filing of a duplicative action instead of a compulsory counterclaim." *Walsh*, 2009 WL 10693533, at *7 (citing 6 Wright, Miller & Kane, *Federal Practice and Procedure* §1418 (2d ed. 2008)).

[5] Courts have frequently denied a Plaintiff's request for pseudonymity in defamation and similar cases. *See, e.g., Doe v. Doe*, 649 F. Supp. 3d 136, 139, *aff'd* 85 F.4th 206 (4th Cir. 2023) (denying pseudonymity to plaintiff claiming to have been falsely accused of sexual assault because, *inter alia,*: (1) Plaintiff failed to produce evidence of more than general fear of retaliation or mere embarrassment; (2) when plaintiff accuses an individual of wrongdoing, "[b]asic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names." (*citing S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979); *see Va. Polytechnic Inst. & State Univ.*, 2022 WL 972629, at *3; *Doe v. Pittsylvania Cnty.*, Va., 844 F. Supp. 2d 724, 730 (W.D. Va. 2012); *A.B.C. v. XYZ Corp.*, 282 N.J. Super. 494, 501, 505, 660 A.2d 1199, 1204 (App. Div. 1995)); and, (3) "It would be fundamentally unfair for plaintiff to be able to "clear his name" and wield a potential judgement against [the Defendant] to his advantage but hide under a shield of anonymity if unsuccessful."). The *Doe* court further noted: "Moreover, plaintiff has failed to cite a case in which a plaintiff in a defamation or libel action was allowed to proceed pseudonymously against an alleged victim of sexual assault." *See Doe*, 649 F. Supp. 3d at 142 (*citing Roe v. Does 1-11*, 2020 WL 6152174 (E.D.N.Y, Oct 14, 2020)). *See also Doe v. Doe*, 2026 WL 27819, at *3-*4 (E.D. Mich., Jan. 5, 2026) (defamation Plaintiff denied permission to proceed pseudonymously with the Court noting that party would not be able to clear their name with defamation claim unless they identified themselves while citing cases with similar holding); *Doe v. Ithaca City Sch. Dist.*, 2025 WL 3157792, at *4 (N.D.N.Y, Nov. 12, 2025) (where credibility is a factor, especially where Plaintiff is seeking damages for defamation – allowing Plaintiff to proceed pseudonymously presents an inherent risk of prejudice); *Doe v. Ahrens*, 2025 WL 2301391, at *2 (N.D. Ill. 2025) ("If Doe wishes to use judicial proceedings against Ahrens—who is publicly named in this case - to seek relief from her allegedly defamatory and harassing behavior, he must do so under his true name and accept the risk that certain unflattering details may come to light over the course of the litigation."); *Doe v. MedStar Georgetown Univ. Hosp., Inc.*, 2014 WL 12993130, *3 (D.D.C. 2014) ("extending blanket pseudonymous status to any Plaintiff claiming defamation would run counter to

After this Court sorted out the resultant procedural morass, it set a briefing schedule for the Plaintiff – here the alleged abuser -- to pursue her requested anonymity. Plaintiff's motion was filed under seal on April 23, 2026. This opposition follows.

<u>**Argument**</u>

A.    <u>**Use of Pseudonyms Under the Standards Set Forth in *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61 (2022) is Not Warranted in this Case**</u>

In *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61 (2022), the First Circuit addressed the standard for allowing "[l]itigation by pseudonym[.]" *Id.* at 70. The Court started its analysis by noting the "strong presumption against the use of pseudonyms in civil litigation." *Id.* at 67. The "sturdy foundation" for that presumption was noted by the First Circuit to include, among others,:

    (a)    the Federal Rules of Civil Procedure require all parties to be named, *see id.* at 67;

    (b)    the First Amendment's provision of a qualified right of public access to materials filed in civil litigation, *see id.*;

    (c)    "a common-law right of access to judicial records," *see id.*;

    (d)    our Nation's tradition of doing justice out in the open, neither "in a corner nor in any covert manner." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 567 [(1980)], *see Doe*, 46 F.4th at 68;

    (e)    letting a party hide behind a pseudonym dims the public's perception of the matter and frustrates its oversight of judicial performance, *see id.*;

---

the notion that pseudonymous litigation is a "rare dispensation", *Microsoft*, 56 F.3d at 1464, reserved for "exceptional cases"); *DL v. JS*, 2023 WL 8102409, at *2 (W.D. Texas, Nov. 21, 2023) (noting that "Plaintiff does not identify any case law where a plaintiff bringing claims of libel or defamation was allowed to proceed using pseudonyms against the purported victim of the sexual assault"); *Roe v. Doe 1-11*, No. 20-CV-3788-MKB, 2020 U.S. Dist. LEXIS 195137, 2020 WL 6152174, at *6 (E.D.N.Y. Oct. 14, 2020) ("The Court finds it highly persuasive that Plaintiff fails to and is unable to cite a single case in which a plaintiff, suing for defamation and alleging he was falsely accused of sexual assault, was allowed to proceed anonymously against the victim of the purported assault."); *DL v. JS*, No. 1:23-CV-1122-RP, 2023 WL 8102409, at *2, 2023 U.S. Dist. LEXIS 208259, at *5 (W.D. Tex. Nov. 21, 2023) (same conclusion); *Roe v. Smith*, 116 Cal. App. 5th 227, 248 (2025) (defamation plaintiffs "are generally ill-suited" to proceed pseudonymously).

(f)     Anonymizing the parties lowers the odds that journalists, activists, or other interested members of the public would catch wind of such mischief. *See Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 503-04 (1ˢᵗ Cir. 1989) (acknowledging "the contribution to governance of investigative reporting" regarding such matters); *see id.* at 68-69;

(g)     protecting the appearance of fairness in judicial proceedings [because] "[l]itigating behind a curtain creates a shroud of mystery, giving the impression that something secret is going on." (citation omitted); *see id.*

With this understanding, the Court reiterated that "[l]itigation by pseudonym should only occur in 'exceptional cases[,]'" *see id.* at 70, and set forth a totality of the circumstances standard and further sketched out four general categories of exceptional cases where allowing pseudonymity might be appropriate. *See id.* at 70-72.

1.     **"[P]seudonymity will *never* be justified when the public disclosure that the party seeks to forestall is already a fact." *Doe v. Mass. Inst. of Tech.*, 46 F.4ᵗʰ 61, 73, n.3 (2022) (italicized emphasis supplied).**

As the First Circuit took stock of its generalized framework for analyzing when – if ever – to permit a party to proceed under a pseudonym, it made the point of emphasizing the "broad discretion" this Court has to rule on such issues. *See Doe*, 46 F.4ᵗʰ at 72. It also, as a matter of housekeeping and for the "sake of completeness" noted that "pseudonymity will *never* be justified when the public disclosure that the party seeks to forestall is already a fact." *See id.* at 72, n.3 (emphasis supplied). The public disclosure that the Plaintiff seeks to forestall has been a matter of public record since the Defendant – the initial Plaintiff in this Federal Court case – filed his Complaint in this case of February 26, 2026. *See* Ex. 1 at ¶¶14-15.

The issues that the Court must wrestle with here, not uncommonly, are both legal and equitable. The legal analysis can be - and under the circumstances of this case perhaps should be - as straight-forward as the following. First, the now Defendant son, an

5

alleged victim of incestuous, childhood sexual abuse at the hands of his Plaintiff mother, had the unquestionable right to file his claims in Court under his own name. Second, the provisions of Fed. R. Civ. P. 10(a) provide that "[e]very pleading must have a caption" and "[t]he title of the complaint must name all the parties . . ." John Doe's complaint complied with this Rule. Third, in *Walsh v. GAB Robbins North America*, 2009 WL 10693533, at *7 (D. Mass., Feb. 18, 2009), Judge Gertner addressed a similar issue by noting that "[i]t is important to note, however, that nothing in the Fed. R. Civ. P. Rule 13 prevents the filing of a duplicative action instead of a compulsory counterclaim." *Walsh*, 2009 WL 10693533, at *7 (citing 6 Wright, Miller & Kane, Federal Practice and Procedure §1418 (2d ed. 2008)). There can be little doubt that John Doe had the legal right to proceed as he did. The allegations set forth in that properly filed case are a matter of public record. Thus, the analysis can end right here in John Doe's favor.

Equitable support for that conclusion also exists. There is usually "a presumption in favor of the plaintiff's choice of forum," *CardiAQ Valve Techs., Inc. v. Neovasc, Inc.*, 52 F. Supp. 3d 313, 315 (D. Mass. 2014), but – to the extent that Jane Doe claims to have temporally been the first to file, "giving priority to the first-filed case is not a rigid rule[.]" *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 147 (D. Mass. 1993). "The factors relevant to wise administration here are equitable in nature." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). A court should not presume that the first-filed forum is proper "'where a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation[,] or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day.'" *Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F. Supp. 2d 343,

6

348 (D. Mass. 2005) (*quoting Veryfine Prod., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 22 (D. Mass. 2000)); *see also Ocean Spray Cranberries, Inc. v. Water Wedge, LLC*, 2021 WL 2493454, at *1-*3 (D. Mass. 2021) (Wolf, J) (because of race to courthouse and response to demand that took form of declaratory judgment action, "plaintiff's choice of forum is entitled to little weight[]"); *Nortek, Inc. v. Molnar*, 36 F. Supp. 2d 63, 70 (D. R.I. 1999) ("[w]here this Court has discretion, it will not reward conduct that undermines the sound policy of promoting settlements and negotiations outside the courthouse.") (*citing Davox*, 846 F. Supp. 2d at 148); *OsComp Sys., Inc. v. Bakken Exp., LLC*, 930 F. Supp. 2d 261, 274 (D. Mass. 2013)("[I]n cases such as this the circumstances demonstrate that the winner of the race to the courthouse should not enjoy the presumption of preferable venue."); Gary P. Naftalis, Michael S. Oberman, and Alan R. Friedman, 1 Bus. & Com. Litig. Fed. Cts. § 3:50 (4th ed.) (2020) (where "the party that ordinarily would be the plaintiff is prepared to sue but delays filing in an effort to achieve a settlement, a preemptive filing of a mirror image claim will likely be treated as an improper anticipatory suit.").

John Doe acknowledges this Court's order that – for purposes of these consolidated cases – Jane Doe – having won (deceitfully in John Doe's view) the race to the courthouse – will be viewed as the Plaintiff and he will be pursuing his claims as the Plaintiff-in-Counter-claim. That practical, procedural ruling, however, should not mean that John's mother should also enjoy Court-sanctioned anonymity where the law, the equities and the current public nature of this case overwhelmingly support denying her motion. *See Doe,* 46 F.4[th] at 72, n.3 ("pseudonymity will never be justified when the public disclosure that the party seeks to forestall is already a fact."); *Doe v. Univ. of*

*Southern Indiana*, 172 F.4ᵗʰ 511 (7ᵗʰ Cir., Apr. 13, 2026) (affirming denial of pseudonymity to male who brought intentional infliction of emotional distress against defendants arising out Title IX case where he was alleged to have sexually assaulted female student and despite his argument that proceeding in his own name would cause further mental harm).

2.  **Jane Doe's Situation Does Not Square With the *Doe* Paradigms**

A.  Jane Doe Should Not Qualify for Pseudonymity Under the First *Doe Paradigm* – that Requires Reasonable Fear That Coming Out of the Shadows Will Cause Unusually Severe Harm (either physical or psychological).

Jane Doe has been accused by her son of childhood sexual abuse. In response, she seeks anonymity and has gone to substantial procedural efforts to obtain it. Assessing whether proceeding under her true name will cause unusually severe harm and balancing the relevant interests, requires that the Court not lose sight of the "big picture" in which "[l]itigation by pseudonym should occur only in "exceptional cases." *Doe v. Mass. Inst. of Tech.*, 46 F.4ᵗʰ at 70 (*citing Megless*, 654 F.3d at 408).

Jane Doe's conduct demonstrates that she is unafraid of proceeding in Court proceedings in her own name. These include *In the Matter of: Russell N. Blattberg*, filed in 2014, in which she petitioned the Suffolk Probate Court using her own name to modify an Irrevocable Trust in a manner that would have prejudiced her son's non-discretionary Irrevocable Trust distributions. *See* Dkt. #28 (Massachusetts Probate Court public records under preliminary seal in this case). When those efforts failed, she appears to have arranged to have proceedings initiated in Arizona – a state with no known material connection to the Trust, Jane Doe or John Doe – to achieve the same ends. *See* Dkt. # 29 (Arizona Records). That litigation, commenced in 2020, remains pending as of this

8

writing and appears to be headed to appellate court involvement. As part of these processes, Plaintiff publicly aired a substantial amount of private, family information, much of it derogatory of her son's behavior, lifestyle and health. And, of course, she again laid much of this bare in her now-removed, pre-emptive Superior Court filing and her re-framed operative complaint in this case. Such public behavior undercuts her suggestion that she is a "private" person and further undercuts her claim that proceeding with public litigation causes her unusual psychological impact.

Moreover, the jurisdiction-spanning fight and historic procedural posture between these parties is strikingly at odds with the "ordinary" Plaintiffs in the cases cited by the *Doe* Court as illustrative of the first paradigm case – those where a "would-be Doe" has reasonable fears of physical or psychological harm that would otherwise prevent them from pursuing their rights in Court. The first of these cases was *Does v. Ayers*, 789 F.3d 944, 945 (9th Cir. 2015), where the Petitioner/[Plaintiff] had a history of sexual and emotional abuse and was granted "penalty-phase habeas relief based on sealed, graphic evidence regarding repeated sexual assault in prison, and (2) submitted credible evidence that he would likely be subjected to more violence if his name was revealed alongside the evidence of this abuse[.]" The second was *Does I thru XXII v. Advanced Textile Corp.*, 214 F. 3d 1058, 1070-1071 (9th Cir. 2000) (distinguishing greater threats faced by Plaintiffs of deportation warranting anonymity from typical employer threats of termination, retaliation and blacklisting usually faced by FLSA plaintiffs). Third, the Court referenced *Lauren B. v. Baxter Int'l Inc. & Subsidiaries Welfare Benefit Plan for Active Emps.*, 298 F.R.D. 571, 573 (N.D. Ill. 2014), where Plaintiff demonstrated risk of death if their identity was revealed. Lastly, in *Sealed Plaintiff v. Sealed Defendant*, 537

9

F.3d 185, 190 (2nd Cir. 2008), the Plaintiff was *pro se*, had suffered physical and sexual assault and was seeking assistance from the Court to identify the many "Doe" defendants they named while asking for the Court's help in protecting Plaintiff from further harm.

In her effort to satisfy the first *Doe* paradigm, Plaintiff presents her own affidavit that describes concerns that are no doubt common to any person subject to such allegations, *see e.g., Globe Newspaper Co., Inc. v. Clark of Suffolk County Superior Court*, 2002 WL 202464, at *8 (Feb. 4, 2002) (sexual assault allegations "will have a devastating impact on [accused's] reputations and their lives"), and an unsworn letter from a licensed psychiatrist that suggests that keeping the lawsuit private would avoid increased mental and emotional harm. That letter also predicted that preventing disclosure would reduce the risk of increased symptoms "the likelihood of increased mental and emotional harm" which is characterized as "prolonged adjustment disorder caused by distress around her son's behavior[]" that she observed "worsening of her symptoms since the case has been briefly made public." *See* Pl. Mot. at Ex. A. The psychiatrist predicts that "public disclosure of [Plaintiff's] identity in this case would lead to a clear and clinically significant worsening of her condition[,]" that would "not be a transient reaction, but a sustained increase in psychological distress," and would impair her "ability to function effectively." *See id.* Of course, the psychiatrist goes on to opine that protecting her identity would reduce the risk of symptom escalation, support continuity of treatment and minimize future harms.

Without the ability, at this time, to depose this psychiatrist and Plaintiff to explore issues like the basis of the psychiatrist's opinions and bias issues, what Jane Doe proffers is still not the unusually severe types of harm necessary for the anonymity Plaintiff seeks.

In *Doe v. Univ. of Southern Indiana*, 172 F.4th 511, 515 (7th Cir. 2026), the court affirmed a District Court's decision not to allow a male accused of sexual assault of a female at college to proceed anonymously, when he later sued those involved in Title IX proceedings for claims including intentional infliction of emotional distress. The Seventh Circuit wrote that it was not persuaded to broaden the law to:

> protect a party from risks that publicity would harm his mental health. As the First Circuit acknowledged in *Doe v. Massachusetts Institute of Technology*, federal lawsuits can be stressful and "frequently invade customary notions of privacy and—in the bargain—threaten parties' reputations." 46 F.4th 61, 70 (1st Cir. 2022) (vacating and remanding district court's denial of leave to use pseudonym). But the lines between embarrassment, stress, and degrees of mental illness are not sharp. If there is any mental health exception for the strong presumption against use of pseudonyms, <u>and we are not saying there is</u>, plaintiff's evidence of risk to his mental health was not so compelling that the district court abused its discretion in denying use of a pseudonym here.

*Doe v. Univ. of S. Indiana*, 172 F.4th at 515 (emphasis supplied). Indeed, the First Circuit, went further than what was quoted by the 7th Circuit. Specifically, the First Circuit noted that Federal Court:

> allegations are frequently serious (at least to the parties) and motivated adversaries do not lack for procedural weapons. Facing the court of public opinion under these conditions is sometimes stressful – but that is the nature of adversarial litigation. If commonplace lawsuit-induced distress were enough to justify the use of a pseudonym, anonymity would be the order of the day: Does and Roes would predominate.

*Doe v. Mass. Inst. of Tech.*, 46 F.4th at 70.

Plaintiff's desire for anonymity must be evaluated to determine whether her concerns amount to the unusually severe types of harm necessary to outweigh the many valid reasons for not permitting a party to proceed under a fictitious name. Here, the party seeking such anonymity is a licensed psychologist who faces serious allegations from her son. There can be little doubt that such "allegations of sexual assault of a minor [are] of

public interest." *See, e.g., Doe v. Word of Life Fellowship, Inc.*, 2011 WL 2968912, *2 (D. Mass., Jul. 18, 2011) (*citing Globe Newspaper,* 14 Mass. L. Rep. at 315, *26 (finding that "sexual abuse of children by members of the clergy is . . . a matter of immense public concern and of enormous community interest")).[6]

In all of the cases cited by the *Doe* First Circuit to illustrate the pseudonym paradigms, the Plaintiffs presented as "ordinary" Plaintiffs – meaning those injured by tortious conduct who sought legal redress. In this regard, they are all like John Doe – both at the time of the alleged sexual abuse and the issuance of his demand letter.[7] Under such circumstances, the Court should "not lose sight of the big picture[,]" *see Doe*, 46 F.4[th] at 70, and should see Jane Doe in the light of the conduct in which she has engaged. That conduct includes her "improper anticipatory suit" in which she pre-emptively assumed the mantle of Plaintiff – an action transparently intended to give heft to her state court emergency Motion for Impoundment -- unburdened from the incongruity of being an alleged sexual assault assailant seeking anonymity who has dragged themself into the light by filing pre-emptive defamation claims that are incompatible with appropriate

---

[6] The same public interest, of course, weighs heavily in favor of revealing the names of health professionals alleged to have committed sexual assault and misconduct. *See Honoring the Public Trust: curbing the bane of physician sexual misconduct*, J. Law Biosci. 2022 Mar 29;9(1): lsac007. doi: 10.1093/jlb/lsac007 (available at https://pmc.ncbi.nlm.nih.gov/articles/PMC8968028/) (last visited Apr. 28, 2026); *Former Massachusetts doctor faces 81 new sexual assault charges* (available at https://www.cbsnews.com/boston/news/dr-derrick-todd-charges-sexual-assault/ (last viewed April 29, 2026).

[7] Plaintiff's response to the pre-suit demand letter is also contrary to her assertions of unusual psychological harm due to Court proceedings. She chose to *initiate* this litigation instead of engaging in the requested dialog before – and perhaps *in lieu* of - such litigation. The Courts have been clear that, given the strong presumption of public access that attaches to our legal system, those initiating such claims should expect the process to be public. *See supra.* at 3, n.5 (citing cases); *see also Doe v. Indiana Black Expo.*, 923 F. Supp. 137, 141-142 (S.D. Indiana) (1996) (plaintiff chose to bring private claims to the court, and claims accuse defendants of serious and deliberate wrongdoing with attacks on defendant's integrity and reputations, such that basic fairness requires plaintiff to stand behind them); *Doe v. Bell Atlantic Business Systems Services, Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995) (Gertner, J.) (in civil context plaintiff instigates the action, and except in most exceptional cases, "must be prepared to proceed on the public record").

12

anonymity. *See supra.* at 3, n.5 (citing cases establishing that defamation claims are particularly ill-suited for anonymity).

The harms about which the Plaintiff complains are those normally incident to civil litigation. *See Doe*, 46 F.4th at 70. They are not comparable to: (a) having historic sexual abuse repeated at the hands of other inmates; (b) extraordinary retaliation such as deportation, arrest or imprisonment; (c) public disclosure that threatened recovery from a longstanding disorder that threatened death; or, (d) identification resulting in retaliatory physical or mental harm. *See id.* at 71 (discussing example cases for first paradigm).

Jane Doe's motion should be denied and this case should proceed in the usual manner unburdened by anonymity.

B.     **The Second *Doe* Paradigm – Involving Harm to "Innocent Non-Parties" -- Does Not Support Plaintiff's Motion.**

The *Doe* Court cites three cases as illustrative of the second paradigm. *See Doe*, 46 F. 4th at 71.

In *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993), the 4th Circuit addressed whether denial of anonymity was an abuse of discretion in a medical malpractice case where a husband and wife sought anonymity where the wife had been fraudulently and artificially inseminated with defendant-physician's sperm resulting in two children. *See id.* at 235. The parents had found out about Dr. Jacobson's misconduct through media reports related to the criminal charges against Dr. Jacobson. *See id.* There, the Plaintiff's concerns related to the "effect upon the children if they should learn that John James was not their biological father[]" and how best to address that situation. *Id.* at 238. There, the resultant children were unquestionably innocent parties that were put in their position by the improper conduct by the defendant-physician. *See id.* Plaintiff's former patients,

13

community and bereavement group members are – unless they are also victims – not at all similar to the *Jones* children. The case is simply distinguishable.[8]

Similarly, in *Doe v. Trustees of Dartmouth Coll.*, 2018 WL 2048385 (D.N.H. 2018) Doe – who was expelled from Dartmouth for a drunken sexual encounter with a female student – sought anonymity. The non-party assault victim was "Sally Smith" and the court reasoned that as a non-party she had not availed herself of the court system where one "using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." Sally's level of involvement in the underlying action was dramatically different than the general community members and unidentified bereavement group members whose privacy rights Plaintiff attempts to bootstrap as support for her quest for anonymity. This case also is distinguishable.

Lastly, the First Circuit cited *Doe v. Eason*, 1999 WL 33942103 (N.D. Texas 1999), where the Court addressed a public school teacher's request for anonymity after she was discriminated against for reporting sexual abuse of her minor daughter, a kindergarten student who was "sexually molested by the nine-year-old son of a "School District administrator." *Id.* at *1. That daughter was plainly an innocent non-party to the discrimination case worthy of protection.

Once again, the Plaintiff's community, former patients and bereavement group members are not at the same risk as those in the paradigm cases. Those Plaintiff uses to make her argument, unless they too are victims, are at best potential fact witnesses and their potential involvement and allegations of speculative harm (that is a usual incident of such claims) does not warrant anonymity.

---

[8] *Jones* – like Boston Archdiocese cases -- does highlight the importance of public disclosure in informing and encouraging other victims to come forward.

14

The second *Doe* paradigm does not support Plaintiff's request.

C.    **The Third *Doe* Paradigm – Where Anonymity is Necessary to Forestall a Chilling Effect on Future Litigants who may be Similarly Situated – Does not Support Plaintiff's Motion.**

Plaintiff is alleged to have sexually abused her minor son. In her rush to Superior Court, Plaintiff sought to change the narrative from her being accused of such misconduct to her being the victim of other misconduct. Such tactics square with the old adage that the best defense is a good offense. But here, neither the tactics nor the adage should survive contact with the realities of this case.

As it relates to Defendant's sexual assault allegations, this case presents as an unfortunate, but classic, "he said/she said" case. Ultimately, the jury will need to make a credibility assessment. The Court should resist the suggestion that it pre-determine who is telling the truth. *See Doe v. Univ. of Southern Indiana*, 172 F.4[th] at 515 (rejecting the parties' reliance on the merits of their claims while indicating that pseudonym issues should be decided without District Court taking premature look at merits of case).

In order to obtain the perceived procedural fruits of her rush to Court and becoming Plaintiff, the Defendant's mother asks the Court to pre-determine "extortionate threats disguised as lawsuits." *See* Pl. Memo. at 5. She does so by making things up. For example, at page 2 of her memorandum she writes "John Doe, through counsel, sent notice to Jane Doe of his intent to file a public lawsuit alleging assault if she did not pay him a large sum of money." *See id.* (emphasis supplied). The letter that was sent, however, sought a discussion about resolving the claims without litigation, and does not mention any money – let alone a "large sum of money[.]" The communication was

simply devoid of the extortionate language with which Plaintiff seeks to cloak her inappropriate responsive conduct.

Moreover, the cases cited by the First Circuit in *Doe* as illustrating the third paradigm do not support Plaintiff's position. *See In re Sealed Case*, 971 F.3d 324, 327 (D.D.C. 2020) (*citing Francis,* 631 F.3d at 1316–1318 (protecting plaintiffs' identities in case involving sexual abuse of minors); *see also Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001) (terming "abortion as the paradigmatic example of the type of highly sensitive and personal matter that warrants a grant of anonymity").

In short, the factors that support anonymity - if requested by minors alleging sexual abuse - or those contending with the issues surrounding abortion, provide no support for an anonymity request by a person alleged to have been the child abuser who decides to try to turn the allegations on their head through the expedient of filing pre-emptive defamation and related claims. *See also Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (noting that hostile public reaction to filing of a lawsuit will only with great rarity warrant anonymity, but allowing it because of evidence establishing that "Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to a Rankin County community hostile to the viewpoint reflected in plaintiffs' complaint"); *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (noting that anonymity may be allowed in cases involving mental illness, homosexuality, transsexuality and cases against the government, but that when suing private individuals, courts have found *more* reason *not* to grant the plaintiff's request for anonymity.").

This Court should not reward the Plaintiff, under the third paradigm for her misleading procedural gamesmanship in rushing to court in a manner that undercuts the

16

public policy of encouraging pre-suit settlement because doing so would otherwise encourage future accused sex abusers to pre-emptively file retaliatory defamation claims that are especially ill-suited to anonymity. *See supra.* at 3, n.5. (collecting cases).

D.   **The Fourth *Doe* Paradigm – Involving Suits that are Bound Up with a Prior Proceeding Made Confidential by Law -- Does not Support Plaintiff's Motion.**

Plaintiff's half-hearted attempt to suggest that the fourth *Doe* paradigm supports her being granted anonymity because she rushed to Superior Court and filed an "emergency" motion to impound that violated Massachusetts Practice is similarly unavailing.

First, there was no emergency because at Jane Doe's request, John Doe's counsel had agreed not to file his Federal Court Complaint in this case before the end of February. Jane Doe filed her Superior Court complaint on Wednesday, February 25, 2026, without communication with John Doe's counsel. *See* Ex. 1 at ¶¶6-9.

Second, the Plaintiff failed to comply with Massachusetts Superior Court Rule 9A(d)(1) that requires emergency motions to be served on all parties forthwith upon filing. *See id.* at ¶¶6-13 (detailing procedure). That did not happen. *See id.* at ¶11. As a likely intended result, the emergency impoundment procedures in state court did not have the benefit of opposition pleading and argument.

Third, Massachusetts case law makes it apparent that pseudonymity for the Plaintiff is particularly inappropriate. As explained by former SJC Chief Justice Gants, then sitting as a Justice of the Superior Court, in *Globe Newspaper Co., Inc. v. Clerk of the Suffolk County Superior Court*, 14 Mass. L. Rptr. 315, 2002 WL 202464 (Feb. 4, 2002), despite the fact that allegations of sexual abuse can have a devastating impact on

17

reputations and lives, and an accused's strong personal interest in sealing such information, sexual abuse of children is "quite properly, a matter of immense public concern and enormous community interest." *See id.* at \*8. Despite the strength of the arguments in favor of anonymity there, the Court reasoned that:

> this Court recognizes that, while courts sometimes protect the privacy rights of victims and allow them to use a pseudonym, courts almost never find privacy rights in the alleged victimizers and allow them to proceed with a pseudonym. *See Doe v. Diocese Corporation*, 43 Conn. Super. 152, 647 A.2d 1067 (Superior Ct. Conn.1994) (forbidding the use of a pseudonym by a clergy defendant accused in a civil action of child sexual abuse). Certainly, defendants in criminal cases are virtually never permitted to proceed with a pseudonym, even though their reputations, too, may be devastated by the indictment regardless of the verdict. *See U.S. v. Maling*, 737 F.Supp. 684, 705-706 (D.Mass.1990) (denying defendant's request to substitute a name other than his own and declaring, "The defendant must live with his name and its attendant reputation"). *But see United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir.1981) (permitting defendant to use pseudonym when he faces a risk of serious bodily harm if his cooperation with the government were to become known). The primary difference between the privacy interests of plaintiffs and defendants in cases alleging sexual abuse is that, for a plaintiff, the stigma and other problems that arise from revelation of his identity remain even after he prevails at trial. For a defendant, vindication at trial may not entirely obliterate the memory of the stigma, but it will certainly diminish its force.

*Id.* at \*9. Federal Courts have employed the same rationale or otherwise reached the same result. *See, e.g., Doe v. Doe*, 649 F. Supp. 3d 136, 139-141 (E.D. N.C. 2023) (denying anonymity to male Plaintiff in case involving, *inter alia*, claims for defamation and intentional infliction of emotional distress arising out of allegedly false claims of sexual assault against him and noting that Plaintiff unable to cite a single case in which a Plaintiff making such claims was allowed to proceed anonymously against the purported victim of assault), *aff'd Doe v. Doe*, 85 F. 4th 206 (4th Cir. 2023); *Roe v. Doe*, 319 F. Supp. 3d 422, 426-431 (D.D.C. 2018) (denying pseudonymity to defendant accused of sexual assault).

18

Under the circumstances of this case and given the governing standard of *Doe v. Mass. Inst. of Tech.*, the fourth *Doe* paradigm does not warrant allowing Plaintiff to proceed under a pseudonym. *See also Doe v. Word of Life Fellowship*, 2011 WL 2968912, at \*2-\*3 (D. Mass. 2011) (denying pseudonymity to man accused of sexual assault despite his claims that his public identification would: (1) harm both his family and reputation; (2) cause economic harm and embarrassment; and, (3) be fundamentally unfair because Plaintiff was using a pseudonym, because he had not made the requisite showing and there had been a prior public disclosure to the police) (*citing T.S.R. v. J.C.*, 288 N.J. Super. 48 (N.J. Super. 1996) (defendants can defend claims against them and achieve vindication upon dismissal of claims)).

WHEREFORE, Plaintiff's motion should be denied.

Respectfully submitted,
The Defendant,
By his attorney,

/s/ Carmen L. Durso

_____

Carmen L. Durso, Esq.
BBO # 139340
Law Office of Carmen L. Durso
276 Union Ave.
Framingham, MA 01702
(617) 728-9123
Carmen@dursolaw.com

Jeffrey S. Beeler, Esq.
BBO #: 563679
jbeeler@hbmhlaw.com
Amanda Bryant, Esq.
BBO #: 703258
Heinlein Beeler Mingace & Heineman, P.C.
276 Union Ave.
Framingham, MA 01702
(508) 626-8500 (T)

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party, in accordance with the Court's ECF Administrative Procedures, on May 7, 2026.

/s/ Carmen L. Durso

_____

CARMEN L. DURSO