IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2026 MAY -7  AM 10: 34

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN DOE,<br><br>    Defendant | Case 1:26-cv-11011<br><br>**Proposed Brief of Amicus Curiae Prof. Eugene Volokh in Support of Defendant's Opposition to Motion to Proceed Under Pseudonym** |

## Introduction

Jane Doe is suing John Doe for accusing her of sexual abuse—an accusation which he claims is true and therefore constitutionally protected. Of course, she is entitled to do this and can recover damages if she prevails on her claim. But she is not entitled to do so under a cloak of secrecy. Like other libel plaintiffs, she must litigate this case in her own name.

Our legal system recognizes a strong presumption in favor of requiring parties to litigate in their own names. And this presumption carries particular force where, as here, the Court must decide whether speech is constitutionally protected. Because this case does not present an exceptional circumstance warranting a departure from this rule, the Court should deny Plaintiff's Motion to Allow Parties to Proceed Under a Pseudonym (ECF No. 31) (Mot. for Pseudonymity).

1

## Argument

### I. Pseudonymity is highly disfavored because it impedes the public's right of access to judicial proceedings.

"[T]here is a 'strong presumption against the use of pseudonyms in civil litigation.'" *Doe v. MIT*, 46 F.4th 61, 67 (1st Cir. 2022) (citing *Does 1-3 v. Mills*, 39 F.4th 20, 25 (1st Cir. 2022)); *see also, e.g., Doe v. Converse/Malden Pub. Libr.*, No. 26-CV-11259-JDH, 2026 WL 810637, at *1 (D. Mass. Mar. 24, 2026) (applying that presumption); *Doe v. Buckingham Browne & Nichols Sch.*, No. CV 25-10176-FDS, 2025 WL 1314250, at *1 (D. Mass. Apr. 9, 2025) (same); *Spaulding v. Warren*, No. CV 24-12340-DJC, 2024 WL 5341201, at *1 (D. Mass. Dec. 20, 2024) (same), *appeal dismissed*, No. 25-1054, 2025 WL 1993477 (1st Cir. June 18, 2025). Pseudonymity implicates "the values underlying the right of public access to judicial proceedings and documents under the common law and First Amendment," *MIT*, 46 F.4th at 68.

In this respect, the First Circuit's approach coincides with that of other federal circuits, which recognize a strong presumption that "[p]laintiffs' use of fictitious names runs afoul of the public's common law right of access to judicial proceedings." *Does I thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1067 (9th Cir. 2000). Courts may allow parties "to litigate under a pseudonym" only if "extraordinary circumstances support such a request." *Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014). "It is the exceptional case in which a plaintiff may proceed under a fictitious name." *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992). "The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010).

2

The presumption against pseudonymity preserves the multiple benefits that stem from public supervision of the judiciary. First, public access to judicial records, including the parties' names, "allows the citizenry to monitor the functioning of our courts, thereby [e]nsuring quality, honesty and respect for our legal system." *Does 1-3 v. Mills*, 39 F.4th at 25 (cleaned up). "Lacking knowledge of the parties' names, the public could learn virtually nothing about a case outside the facts and arguments in the record." *MIT*, 46 F.4th at 68. Pseudonymity thus "dims the public's perception of the matter and frustrates its oversight of judicial performance." *Id.*

For instance, identifying the parties enables the public and press to assess their credibility, evaluate whether they are frequent or vexatious litigants, and determine whether they have been involved in previous cases that might have arisen from the same or similar facts. *See* Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1370–71 (2022). In fact, this very case arose from a series of interconnected proceedings, including prior state cases. *See, e.g.*, Exhibits A & B to Motion to Strike, ECF Nos. 28–29 (now preliminarily sealed, ECF No. 34). Without access to the parties' names, the public and press would find it much harder to trace the history of these proceedings and what they reveal about the parties' relationship.

Second, openness preserves the public's confidence in the judiciary by "protecting the appearance of fairness in judicial proceedings." *MIT*, 46 F.4th at 69. "Litigating behind a curtain creates a shroud of mystery, giving the impression that something secret is going on." *Id.* (cleaned up). Public confidence "cannot long be maintained where important judicial decisions are made behind closed doors and then announced

in conclusive terms." *Public Citizen*, 749 F.3d at 263 (cleaned up). This logic applies to pseudonymous litigation, as "[a] judicial system replete with Does and Roes invites cynicism and undermines public confidence in the courts' work." *MIT*, 46 F.4th at 69. This "[d]istrust is toxic to the judiciary's authority, which depends in large measure on the public's willingness to respect and follow its decisions." *Id.* (cleaned up).

Therefore, "[l]itigation by pseudonym should occur only in 'exceptional cases.'" *Id.* at 70 (citing *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011)).

## II. This presumption applies—and is especially important—in defamation cases.

### A. Reputational harm inherent to defamation cases does not justify pseudonymity.

"Lawsuits in federal courts frequently invade customary notions of privacy and . . . threaten parties' reputations . . . . Facing the court of public opinion under these conditions is sometimes stressful—but that is the nature of adversarial litigation." *MIT*, 46 F.4th at 70. An exception for reputational harm would mean that "anonymity would be the order of the day: Does and Roes would predominate." *Id.* "[W]e have refused to allow plaintiffs to proceed anonymously merely to avoid embarrassment," including when a plaintiff's "asserted interest lies in protecting his reputation." *Doe v. Trustees of Indiana University*, 101 F.4th 485, 491 (7th Cir. 2024) (cleaned up).

This principle applies equally to defamation cases. *See, e.g., Doe v. Doe*, 85 F.4th 206, 211, 217 (4th Cir. 2023) (rejecting pseudonymity in a defamation case despite allegations that identification would cause "irreparable harm to his reputation"). "[A]llegations in defamation cases will very frequently involve statements that . . . could embarrass plaintiffs or cause them reputation[al] harm. This does not come

close to justifying anonymity." *Doe v. Bogan*, 542 F. Supp. 3d 19, 23 (D.D.C. 2021). "[C]onclusory fears of reputational and economic injury do not outweigh the public's substantial and presumptive interest in disclosure. Indeed, fear of harm to one's reputation applies to . . . virtually any defamation case." *Roe v. Smith*, 116 Cal. App. 5th 227, 244 (2025). (*Roe v. Smith* treated California pseudonymity law as interchangeable with federal law, citing numerous federal appellate and district court decisions throughout.)

Accordingly, "courts have consistently rejected anonymity requests predicated on harm to a party's reputational or economic interests." *Doe v. MaineGeneral Med. Ctr.*, No. 1:24-CV-00220-NT, 2024 WL 3967172, at *1 (D. Me. Aug. 28, 2024) (cleaned up). "[R]eputational harm alone is not an adequate justification for proceeding anonymously." *Doe v. Ahrens*, No. 25 C 02565, 2025 WL 2301391, at *2 (N.D. Ill. July 30, 2025) (rejecting pseudonymity in a defamation case); *see also, e.g., Doe v. Roe*, 247 N.E.3d 1143, 1148 (Ohio Ct. App. 2024) (rejecting pseudonymity in a defamation case despite claims of "personal and professional harm," "amplification of pain, suffering, and personal embarrassment"); *Doe v. Washington Post*, No. 1:19-cv-00477-UNA, 2019 WL 2336597, at *3 (D.D.C. Feb. 26, 2019) (likewise, citing potential damage to "reputation" and "economic harm"); *Roe v. Does 1-11*, No. 20-CV-3788-MKB-SJB, 2020 WL 6152174, at *2–3 (E.D.N.Y. Oct. 14, 2020) (likewise); *P.D. & Assocs. v. Richardson*, 104 N.Y.S.3d 876, 880 (Sup. Ct. 2019) (likewise).

More broadly, many litigants would prefer to sue under a pseudonym to avoid being linked to potentially damaging allegations.

[A]ny doctor sued for medical malpractice, any lawyer sued for legal malpractice, or any individual sued for sexual molestation can assert that the plaintiff's allegations will cause harm to his reputation, embarrassment and stress among his family members, and damage to his business as a result of the litigation.

*Doe v. Doe*, 282 Ill. App. 3d 1078, 1088 (1996). Yet "it is difficult to see how defendant"—who, similar to Plaintiffs here, sought pseudonymity to conceal what he claimed were false allegations of sexual misconduct with a minor—"has set himself apart from any individual who may be named as a defendant in a civil suit for damages." *Id.* Allowing pseudonymity simply to protect "personal, private, and family matters" "would create an exception that virtually swallows the rule." *Doe v. Prudential Ins. Co. of Am.*, 744 F. Supp. 40, 42 (D.R.I. 1990) (cleaned up).

Courts have noted that proceeding publicly is how defamation plaintiffs clear their names. "[W]e fail to see how Appellant can clear his name through this lawsuit without identifying himself." *Doe v. Doe*, 85 F.4th at 217. "[I]t would be fundamentally unfair for Appellant to be able to clear his name and wield a potential judgment against Appellee but hide under a shield of anonymity if unsuccessful." *Id.* at 215 (cleaned up). "[L]itigating publicly will afford Doe the opportunity to clear his name in the community." *Megless*, 654 F.3d at 410. Denying pseudonymity here simply requires Jane Doe to do what each of those litigants had to do: pursue her claim openly.

Plaintiff argues that proceeding under her own name would "moot the very relief" she seeks. Mot. for Pseudonymity at 6–7. Though courts have recognized a narrow exception where disclosure would inflict the very injury litigated against, that exception has not been extended to defamation cases. This is likely because public litigation will amplify the plaintiff's injury in virtually every defamation case.

6

Instead, the "injury litigated against" rationale applies only where "[p]reventing disclosure of [plaintiff's] identity is . . . the *basis* of [the] lawsuit." *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 812, n.2 (10th Cir. 2006) (emphasis added). Such suits typically involve a cause of action in which litigants attempt to remove their names from public databases or registries. *See, e.g., Doe v. Harris*, 640 F.3d 972, 973, n.1 (9th Cir. 2011) (permitting pseudonymity in a lawsuit challenging plaintiff's inclusion on sex offender registry).

In contrast, courts reject this exception in libel cases where "[p]reventing disclosure of [plaintiff's] identity is not the basis of [the] lawsuit," but plaintiff instead "seeks monetary compensation for a disclosure that has already occurred." *Luo v. Wang*, 71 F.4th 1289, 1300 (10th Cir. 2023) (libel case quoting and endorsing *Raiser*). The rationale has also been rejected for defamation suits involving sexual assault accusations, where "[the] defamation has already occurred," and "the basis of [plaintiff's] suit is that he is *already* publicly identified with these allegations." *Doe v. Valencia College*, No. 6:15-cv-1800-Orl-40DAB, 2015 WL 13739325, at *3 (M.D. Fla. Nov. 2, 2015). "To hold otherwise would effectively permit all defamation plaintiffs to proceed by way of pseudonym." *Roe v. Smith*, 116 Cal.App.5th at 246 (rejecting application of the "injury litigated against" rationale where plaintiff was "suing for damages based on comments which have already been made").

The case cited by Plaintiff in support of this contention, *Patrick Collins, Inc. v. Does 1-38*, 941 F. Supp. 2d 153, 161 (D. Mass. 2013), illustrates this distinction. There, Plaintiffs attempted to subpoena IP addresses of Doe defendants to uncover

their identities. Defendants challenged the subpoenas "for the very purpose of protecting their personal identifying information from disclosure." *Id.* Crucially, the request for pseudonymity occurred "before any names were made public," *id.* at 156, and pseudonymity was granted only "at this preliminary stage in the litigation." *Id.* at 160. By contrast, the basis of Plaintiff's lawsuit here is not to prevent disclosure of her name; it is to seek compensation for a disclosure that has already occurred.

## B. Risk of economic or professional harm does not itself justify pseudonymity.

"[A]nonymity has not been permitted when only the plaintiff's economic or professional concerns are involved." *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1249, n.10 (10th Cir. 2017) (cleaned up). "That a plaintiff may suffer embarrassment or economic harm is not enough" to warrant a pseudonym. *Megless*, 654 F.3d at 408. Pseudonymity is not justified where Plaintiff contends that disclosure "could negatively affect her professional standing." *Roe v. Skillz, Inc.*, 858 F. App'x 240, 241 (9th Cir. 2021). "[C]ourts agree that '[e]conomic harm or mere embarrassment are not sufficient to override the strong public interest in disclosure.'" *Doe v. W. New England Univ.*, No. 3:19-30124-TSH, 2019 WL 10890195, at *1 (D. Mass. Dec. 16, 2019) (citing *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D. Mass. 1995)).

## C. Allegations involving sexual assault are not a categorical exception to the presumption of access.

Courts have consistently rejected plaintiffs' attempts to proceed under pseudonyms in defamation cases brought over claims of sexual assault. *See e.g., Doe v. Doe*, 85 F.4th 206, 211–12 (4th Cir. 2023); *Doe v. Grp. 1 Auto., Inc.*, No. 0:25-CV-13931-

CMC-WSB, 2026 WL 491495, at *6–8 (D.S.C. Feb. 20, 2026); *Doe v. Roe*, No. 23-CV-01149-NYW-KLM, 2023 WL 4562543, at *3 (D.Colo., July 17, 2023); *DL v. JS*, No. 1:23-CV-1122-RP, 2023 WL 8102409, at *2 (W.D. Tex., Nov. 21, 2023); *Roe v. Does 1-11*, No. 20-CV-3788-MKB-SJB, 2020 WL 6152174, at *4, *6 (E.D.N.Y., Oct. 14, 2020); *Roe v. Doe*, No. CV 18-666 (CKK), 2019 WL 2058669 (D.D.C. May 7, 2019). "Allegations of sexual assault, including allegations of sexual abuse of minors, are paradigmatic examples of highly sensitive and personal claims. But this factor alone is not sufficient to entitle a plaintiff to proceed under a pseudonym." *Sebastian v. Doe*, No. 25-CV-0911 (JAV), 2025 WL 856242, at *2 (S.D.N.Y., Mar. 19, 2025) (cleaned up).

"Plaintiff does not identify any case law where a plaintiff bringing claims of libel or defamation was allowed to proceed using pseudonyms against the purported victim of the sexual assault." *DL v. JS*, 2023 WL 8102409, at *2. "The Court finds it highly persuasive that Plaintiff fails to and is unable to cite a single case in which a plaintiff, suing for defamation and alleging he was falsely accused of sexual assault, was allowed to proceed anonymously against the victim of the purported assault." *Does 1-11*, 2020 WL 6152174, at *6. While Plaintiff cites *Doe v. Trustees of Boston University*, 2024 WL 4700161, at *4 (D. Mass. 2024) to argue that there is a "special opprobrium attached to allegations of sexual misconduct," that case did not involve a defamation plaintiff proceeding pseudonymously *against the alleged victim*. Rather, it concerned a faculty member challenging a finding of institutional culpability in a Title IX con-

9

text, which courts routinely treat differently from other sexual assault cases. *See in-fra* Section III.D. These cases are also distinct because, as previously argued, Plaintiff here does not risk "incurring the very injury litigated against."

**D. The presumption of access is heightened in defamation cases.**

Public access to court records is especially important in cases implicating a speaker's First Amendment rights. The public is entitled to monitor court proceedings so it can be confident that the correct result has been reached. Nowhere is this ability more important than where a person seeks to punish another for the content of their speech—speech which, if true, would be constitutionally protected and valuable.

The need for openness is additionally heightened where, as here, the challenged speech concerns allegations of sexual assault. Such allegations address matters of profound importance that have generated extensive public debate. Rendering a decision "behind closed doors" would understandably increase public skepticism about the fairness of these proceedings.

For these reasons, the Court should be especially reluctant to depart from the norm of public access in this context. Requiring Jane Doe to proceed in her own name reflects the public's legitimate interest in observing and evaluating the judicial process, not "a morbid and sensational prying into private lives for its own sake," Mot. for Pseudonymity at 7.

> "It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884)

[Oliver Wendell Holmes, J.]. Accordingly, as a general matter, court records are presumptively public documents.

*Care & Prot. of Adele*, 495 Mass. 710, 718–19 (2025).

### III. The *MIT* factors weigh against Jane Doe proceeding pseudonymously.

"The party seeking pseudonymity bears the burden of rebutting the strong presumption against it." *MIT*, 46 F.4th at 73. The First Circuit's "totality of the circumstances" framework requires Courts to consider four "paradigm[s]" when determining whether to permit a party to proceed pseudonymously: (1) whether the movant "reasonably fears that coming out of the shadows will cause him unusually severe harm," (2) whether "identifying the would-be Doe would harm 'innocent non-parties,'" (3) whether "anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated" and (4) whether the suit is "bound up with a prior proceeding made confidential by law." *Id.* at 70–71. Plaintiff fails to show, under this framework, that this is an "exceptional" case warranting pseudonymity.

### A. Paradigm 1: Unusually severe harm

The "unusually severe harm" paradigm is limited to "physical or psychological" harm, *MIT*, 46 F.4th at 71—"a particularized risk of extreme physical danger, deportation, criminal exposure, or debilitating psychological injury distinct from ordinary litigation stress." *Smith v. Bentley Univ.*, No. 25-CV-12317-AK, 2026 WL 194339, at *2 (D. Mass. Jan. 26, 2026) (citing *MIT*, 46 F.4th at 71–72).

Plaintiff argues that if she were to proceed publicly, she would face "a very real threat of unfair and severe psychological harm" and "a reasonable fear of physical harm." Mot. for Pseudonymity at 4. But she does not provide any concrete evidence

11

that such harm will occur, nor any examples of what it might entail. Such vague assertions are not sufficient to meet the first paradigm of the *MIT* test. "[D]istrict courts routinely look for 'aggravating factors' or 'evidence' to determine whether a risk of harm truly exists. [A] district court [cannot] properly weigh this factor based on nothing more than a bare assertion of risk." *Doe v. Doe*, 85 F.4th at 213.

Assertions of "reputational injury, diminished employment and . . . psychological distress" "do not meet the 'unusually severe' threshold" in the "absence of evidence of a particularized risk of physical danger or debilitating psychological injury." *Smith v. Bentley Univ.*, 2026 WL 194339, at *2. "Plaintiff . . . only makes a conclusory statement that he fears he and his family would be subjected to discrimination, harassment, and violence. Plaintiff must state more than a conclusory statement for the Court to give substantial weight to his alleged fear of harassment." *DL v. JS*, 2023 WL 8102409, at *3 (cleaned up). *See also Anonymous v. Medco Health Sols., Inc.*, 588 F. App'x 34, 35 (2d Cir. 2014) (affirming denial of pseudonymity where assertions of likely harm were "vague," "far fetched," and "rather speculative in nature."). Some courts even require medical evidence to support claims of psychological harm. *See, e.g., Skillz, Inc.*, 858 F. App'x at 241–42 (affirming district court's denial of motion to proceed under a pseudonym where plaintiff did not "present[] medical evidence that supports the assertion that she will suffer substantial additional mental injury" and merely "state[d] conclusory and general statements without explanation or support"); *see also Doe v. Univ. of S. Ind.*, 172 F.4th 511 (7th Cir. 2026) (concluding that, even if

"there is any mental health exception for the strong presumption against use of pseudonyms," "plaintiff's evidence of risk to his mental health was not [sufficiently] compelling").

Plaintiff also states that "[s]he has already suffered psychologically as a result of" Defendant's actions. Mot. for Pseudonymity at 4. However, any harm already incurred does not counsel in favor of pseudonymity. Rather, this paradigm requires a showing of *ongoing* harm. "[Plaintiff] purports to have already suffered damage to his professional reputation because of the Defendants' alleged misdeeds . . . so it is not clear to me what further harm he would face if forced to proceed under his real name." *MaineGeneral Med. Ctr.*, 2024 WL 3967172, at *1.

Finally, Plaintiff argues that "absent the requested relief John Doe will be allowed to inflict the very harm he improperly threatened Jane Doe with pre-litigation." Mot. for Pseudonymity at 5. But a threat of harm only weighs in favor of pseudonymity if it comes from a third party who does not already know Plaintiff's identity. In situations where the defendant is already aware of the plaintiff's identity, requiring plaintiffs to use their real names will not provide defendants with any additional information.

Courts have therefore routinely rejected threats of harm in these situations. "Plaintiff has not . . . explained how or why the use of her real name in court papers would lead to harm, since those who presumably would have any animosity toward her already know her true identity." *Doe v. Sutton*, No. 4:23-CV-01312-SEP, 2025 WL 871656, at *3 (E.D. Mo. Mar. 20, 2025) (quoting *Doe v. Shakur*, 164 F.R.D. 359, 362

(S.D.N.Y. 1996)). Because defendants "have prior knowledge of her identity," "use of a pseudonym would not mitigate any risk of disclosure to the defendants." *Hinckley v. All American Waste Services Incorporated*, No. CV-25-00927-PHX-SHD, 2025 WL 1940001, at *6, n.2 (D. Ariz., July 15) (cleaned up). "Defendants already know Plaintiff's name and identity. Therefore, allowing Plaintiff to proceed anonymously would not *per se* limit harassment, retaliation . . . or other misconduct. . . . [S]hould such misconduct occur, Plaintiff could seek appropriate, legal remedies." *Doe v. Mahboubi-Fardi*, No. LA CV23-04370 JAK (EX), 2024 WL 2206640, at *5 (C.D. Cal. Jan 2, 2024); *see also Doe v. Weston & Sampson Eng'rs, Inc.*, 743 F. Supp. 3d 751, 764 (D.S.C. 2024) (concluding that, because "[t]he identified individuals . . . are already aware . . . of the present litigation" and "are already harassing her," "Plaintiff has not demonstrated that requiring her to use her real name will itself result in additional retaliation").

### B. Paradigm 2: Harm to innocent non-parties

Plaintiff contends that proceeding publicly would harm innocent non-parties, including "former patients" and "current community of bereavement group members," who may encounter the allegations. Mot. for Pseudonymity at 5. This paradigm typically applies when disclosure would undermine a third party's right to privacy by identifying or implicating them in the litigation. *MIT* provides as an example a case "granting pseudonym status to parents in litigation involving their minor child." 46 F.4th at 71. *See also, e.g., Trustees of Boston Univ.*, 2024 WL 4700161, at *5 (noting the "collateral identification of Jane Roe" as a factor weighing against pseudonymity); *Doe v. Trustees of Boston Coll.*, No. 23-CV-12737-ADB, 2024 WL 816507, at *3 (D.

14

Mass. Feb. 27, 2024) ("If Doe's identity were known, the identity of nonparties who are alleged to have abused Doe could be easy to determine.").

No such risk is present here. Plaintiff instead argues that her patients will "question her and their relationship with her," potentially undermining their "trust, stability, and well-being." Mot. for Pseudonymity at 5. But these are ordinary reputational consequences of defamation litigation. The cases cited in Part II.A and II.B illustrate that harm to one's reputation or employment is generally insufficient to justify pseudonymity. Just as "any doctor sued for medical malpractice, any lawyer sued for legal malpractice, or any individual sued for sexual molestation can assert that the plaintiff's allegations will cause harm to his reputation," *Doe v. Doe*, 282 Ill. App. 3d at 1088, any professional facing serious allegations could claim that public litigation would imperil the trust of their clients. Allowing pseudonymity for this reason, then, would "swallow the rule" of public access.

Indeed, courts have rejected pseudonymity in analogous cases where a doctor claims that public litigation would harm their patients. *See Coe v. U.S. Dist. Ct. for Dist. of Colorado*, 676 F.2d 411, 412, 413 (10th Cir. 1982) (affirming denial of pseudonymity to a physician charged with "sexual or immoral improprieties" despite his assertion that "many long-time patients will be denied his care and his practice will be irreparably damaged"). Indeed, the public may have an especially strong interest in assessing whether a professional has engaged in behavior that they might "question." And if the allegations are false, Plaintiff remains free to vindicate her reputation through litigation. "[A]lthough [Plaintiff] here argues that these allegations will

significantly impact his client relationships and ability to practice law, it is hard to see how he could repair those relationships without an order clearing his name." *Doe v. Doe*, No. 25-CV-13580, 2026 WL 27819 (E.D. Mich. Jan. 5, 2026).

## C. Paradigm 3: Chilling effect on future litigants

Courts have held that deterrence-based arguments are not sufficient to justify pseudonymity, even in cases involving sexual assault allegations.

> Plaintiff additionally maintains that denial of his motion may deter other sexual assault victims from coming forward. The likelihood of such a chilling effect is remote. Plaintiff himself was not deterred by the long line of previous cases in which courts in this District have rejected motions to proceed under a pseudonym brought by alleged victims of sexual assault who have made the same argument about the public interest and possibility of deterrence.

*Doe v. Combs*, No. 24 CIV. 8852 (JPC), 2025 WL 950685, at *5 (S.D.N.Y. Mar. 28, 2025) (cleaned up).

> [W]e reject plaintiffs' argument that requiring them to use their real names would discourage "similarly situated" litigants from bringing defamation cases. We do not see a principled basis to distinguish such a concern in this case from any other defamation case. To accept such a rationale here would equip all defamation plaintiffs with the same argument.

*Roe v. Smith*, 116 Cal.App.5th at 246; *see also Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) (rejecting such a deterrence argument in sexual assault case); *Doe v. Weinstein*, 484 F. Supp. 3d 90, 98 (S.D.N.Y. 2020) (same); *Doe v. Alexander*, No. 25-CV-2241 (RA), 2025 WL 1532414, at *4 (S.D.N.Y. May 28, 2025) (same).

To be sure, the First Circuit does recognize that a "chilling effect on future litigants" is an important factor to consider when deciding whether to grant pseudonymity. *MIT*, 46 F.4th at 71. However, deterrence-based arguments must be considered

16

alongside the other *MIT* factors. As courts have recognized, these arguments, on their own, "prove[] too much":

> Denying anonymity to a plaintiff who prefers it will inevitably have some chilling effect on the willingness of such a plaintiff to sue at all. This is true not only for plaintiffs with mental illness but also for those who were sexually assaulted, those who were falsely arrested or improperly convicted, those who were discriminated against based on sexual orientation or gender identity, and many other plaintiffs who have suffered harms that can and should be redressed through litigation.

*Doe v. Black Diamond Cap. Mgmt. LLC*, No. 22-CV-03194 (PGG) (BCM), 2023 WL 2648017, at *5 (S.D.N.Y. Mar. 27, 2023) (rejecting a deterrence-based argument in favor of pseudonymity); *see also Doe v. Cigna Health & Life Ins. Co.*, No. 25-CV-7021 (DEH) (BCM), 2026 WL 21823, at *5 (S.D.N.Y. Jan. 2, 2026) (accepting *Black Diamond*'s logic in rejecting a deterrence-based argument).

Plaintiff further argues that anonymity is necessary to avoid deterring litigants from defending themselves against "extortionate threats disguised as lawsuits." Mot. for Pseudonymity at 5. But labeling Defendant's claims "extortionate" cannot alter the analysis. That framing assumes that Defendant's allegations are false, which the Court cannot do at this stage. "Any . . . doctor or lawyer [requesting pseudonymity] can also assert that the plaintiff's act of naming him as a defendant is a bad-faith tactic to induce settlement and reap economic gain at the defendant's expense through baseless allegations." *Doe v. Doe*, 282 Ill. App. 3d at 1088.

### D. Paradigm 4: Prior confidential proceeding

Finally, Plaintiff argues this case is "bound up in a proceeding made confidential by a state court order." Mot. for Pseudonymity at 6. That argument misconstrues the scope of this paradigm. As the Court explained in *MIT*, this exception carries weight

17

where proceeding publicly "would otherwise be prohibited . . . by statute." 46 F.4th at 76. *MIT* cited family court proceedings and juvenile records as examples, both of which are granted special protections by law. *Id.* at 71–72.

*MIT* itself involved a challenge to a Title IX proceeding, an area that courts routinely treat as exceptional. This is because confidentiality is an "important aspect" of Congress's procedural requirements mandating that federally funded universities "adopt policies guaranteeing 'a prompt, fair, and impartial investigation and resolution' [of sexual assault claims] and giv[e] certain procedural rights to both 'the accuser and the accused.'" *Id.* at 74; *see also Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("[T]he accused colleges and universities recognize the highly personal and sensitive nature of these cases as well as the limited value of forcing plaintiffs to reveal identities when seeking to vindicate their federal rights."). The unique nature of Title IX cases also distinguishes the present case from *Trustees of Boston Univ.*, 2024 WL 4700161, cited by Plaintiff, which involved a challenge to a Title IX proceeding. Importantly, that Court found that the case "most clearly fit[] within the fourth paradigm" of *MIT*. *Id.* at *4.

Therefore, this case is not "bound up with a prior proceeding made confidential by law," as the exception is to be understood. There is no statute regulating confidentiality in libel cases, and the exception is not triggered by the state court's earlier decisions in this case. Instead, federal decisions on sealing—and therefore on pseudonymity—are governed by federal law. "[T]he state court's order sealing [Defendant's] case neither binds federal courts nor supersedes federal law." *United States v. Delgado*,

No. 13-CR-1991-JGZ-2, 2022 WL 17177668, at *1 (D. Ariz. Nov. 23, 2022). After removal, "the Court is certainly not bound by the [state] Sealing Order in ruling on a procedural motion governed by federal law." *Parson v. Farley*, 352 F. Supp. 3d 1141, 1151, *aff'd*, No. 16-CV-423-JED-JFJ, 2018 WL 6333562 (N.D. Okla. Nov. 27, 2018). Deferring to the state court's sealing decision would "undermine federal law" by allowing state law to "effectively determine the sealing issue." *Milazzo v. Anthony*, No. 2:23-CV-00576-KJD, 2024 WL 1616485, at *6 (D. Vt. Apr. 15, 2024).

Extending pseudonymity on this basis would create an incentive for litigants to seek pseudonymity in state court, where standards may be more relaxed, and then invoke that decision to shield their identities in federal court. This would undermine the strong presumption against pseudonymity provided by federal law.

## Conclusion

Many defamation cases involve scandalous allegations that could severely damage a plaintiff's reputation. In many of these cases, plaintiffs would prefer to avoid linking their names to these allegations by suing under a pseudonym. But that preference cannot override the public's right to oversee and evaluate court proceedings; a right that preserves both the quality of our legal system and the public's confidence in it.

Pseudonymity is therefore the exception, not the rule. Jane Doe should be treated as other libel plaintiffs are routinely treated, and like most other litigants are routinely treated: She should have to litigate this case in her own name.

Respectfully Submitted,

*Eugene Volokh*

Eugene Volokh
Thomas M. Siebel Senior Fellow
Hoover Institution, Stanford University
434 Galvez Mall
Stanford, CA 94305
(650) 721-5092
volokh@stanford.edu
*Pro se*
(Institutional affiliation given for
identification and addressing purposes only)

May 6, 2026

## Certificate of Service

I served this document by e-mail on the counsel for the parties on this case on May 6, 2026 at the e-mail addresses provided on the docket:

Howard M. Cooper, hcooper@toddweld.com, Counsel for Plaintiff
Sandy Eid, seid@toddweld.com, Counsel for Plaintiff
Jeffrey Beeler, jbeeler@hbmhlaw.com, Counsel for Defendant
Carmen Durso, carmen@dursolaw.com, Counsel for Defendant

*Eugene Volokh*

Eugene Volokh